**FOURTH DIVISION**
**BARNES, P. J.,**
**ANDREWS, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 16, 2015**

# In the Court of Appeals of Georgia

A15A0987. RES-GA HIGHTOWER, LLC v. NASSER VOSSOUGH GOLSHANI.

MCMILLIAN, Judge.

This appeal presents a single legal issue: Under OCGA § 44-12-24 and the Georgia Supreme Court's decision in *Security Feed & Seed Company of Thomasville, Inc. v. NeSmith*, 213 Ga. 783 (102 SE2d 37) (1958), does an assignee to a debt have standing to assert a claim that the debtor fraudulently conveyed property in violation of the Georgia Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq. (the "UFTA")?[1]

---

[1] We will refer to the operative provisions of the UFTA as they existed at the time the complaint was filed, while noting that the UFTA has since been amended in 2015 and is now called the Uniform Voidable Transactions Act ("UVTA"). See Ga. L. 2015, p. 996, § 4A-1 (effective July 1, 2015).

The facts are largely undisputed.[2] On or about October 25, 2006, Rockdale Investment Partners, LLC borrowed funds from Omni National Bank (the "Bank"), which was evidenced by a promissory note (the "Note"). Appellee Nasser Golshani personally guaranteed the Note. Two years later, Rockdale Investment Partners and Golshani defaulted on their obligations to the Bank.

Some months later, the Bank was closed by the Georgia Department of Banking, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as the receiver for the Bank. Effective February 9, 2010, the FDIC, as receiver for the Bank, assigned all of its rights, title, and interest in the Rockdale Investment Partners and Golshani debt to Multibank 2009-1 RES-ADC Venture, LLC ("Mutibank"). Later, on August 31, 2010, Multibank assigned its rights, title, and interest in the Rockdale and Golshani debt to Appellant RES-GA Hightower, LLC ("RES-GA"). On March 29, 2013, RES-GA obtained a judgment against Golshani in the amount of the Note.

In the meantime, on April 20, 2009, which was after Golshani had defaulted on the Note but before there was a judgment entered against him, Golshani conveyed

---

[2] "This Court reviews the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant." *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 31 (766 SE2d 497) (2014).

2

two parcels of real property to Simin Khani[3] by quitclaim deed and another property to his daughter, Samira Golshani,[4] also by quitclaim deed. A few months later, these properties were conveyed again – this time to Golshani's mother.

RES-GA filed a lawsuit in Fulton County Superior Court against Golshani, Simin Khani, Golshani's daughter, and Golshani's mother, asserting that the property transfers were done to defraud Golshani's creditors and seeking to set aside the conveyances under the UFTA. After Golshani's daughter submitted an affidavit averring that she had not been in contact with her father or grandmother in several years, that she was unaware of the property deeded to her, and that her signature on the quitclaim deed to her grandmother was forged, Golshani's daughter was dismissed from the lawsuit.

---

[3] Khani was apparently engaged to Golshani at the time and according to Golshani, the conveyances were done in connection with the Islamic tradition of "mahar" or "mahr," a dowry paid by the groom to the bride at the time of marriage. See Lindsey E. Blenkhorn, *Islamic Marriage Contracts in American Courts: Interpreting Mahr Agreements as Prenuptials and Their Effect on Muslim Women*, 76 S. CAL. L. REV. 189, 198-200 (2002).

[4] In verified responses to interrogatories, Golshani stated that he was engaged to Samira Golshani from late 2006 through 2008 and that he conveyed the property to her also in accordance with the tradition of mahar. However, Samira Golshani has denied under oath that she has ever been engaged to Golshani, who is her father.

Golshani moved for summary judgment, asserting among other things, that RES-GA, as the second assignee of the Bank, had no standing to assert a fraudulent transfer claim against Golshani because a fraudulent transfer claim cannot be assigned under Georgia law. The trial court granted summary judgment to Golshani, and this appeal followed.

1. In related enumerations of error, RES-GA asserts that (1) under the UFTA, a creditor who obtained debt through an assignment has standing to assert a fraudulent transfer claim; (2) *NeSmith* no longer controls after the enactment of the UFTA; (3) a fraudulent transfer claim is a property right and OCGA § 44-14-24 does not bar assignment of property claims; and (4) denying standing to an assignee contravenes the public policy of this State in favor of creditors' rights to satisfy valid claims.

(a) Under the UFTA, a creditor can seek to set aside transfers of property by the debtor, "if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor." OCGA § 18-2-74 (a) (1) (2014). In determining intent, consideration is given to an open-ended set of factors listed in OCGA § 18-2-74 (b) (1), which are also commonly called the "badges of fraud." See *Target Corp. v. Amerson*, 326 Ga. App. 734, 737 (1) (755

4

SE2d 333) (2014). A "creditor" is broadly defined as "a person who has a claim," a "debtor" means a "person who is liable on a claim," and a "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." OCGA § 18-2-71 (3), (4) & (6). Accordingly, under the plain terms of the UFTA, an assignee to debt ordinarily would qualify as a "creditor" who has a "claim," but nothing in the UFTA specifically addresses assignments of such claims.

> In Georgia, a separate statute delineates certain claims that are not assignable:
>
> Except for those situations governed by Code Sections 11-2-210 and 11-9-406, a right of action is assignable if it involves, directly or indirectly, a right of property. A right of action for personal torts, for legal malpractice, or for injuries arising from fraud to the assignor may not be assigned.

OCGA § 44-12-24. Here, the issue is whether a claim under the UFTA to set aside a property transfer as defrauding creditors is a "right of action . . . arising from fraud" such that it is not assignable. Id. In deciding this question, the trial court properly relied on *NeSmith*, in which our Supreme Court, after citing and quoting a prior version of this non-assignment statute, held:

5

where, as here, the purchaser or assignee of accounts receivable brings an action to recover on an open account owing by the defendant debtor to the assignor and assigned to the plaintiff, and in the same action seeks equitable relief to set aside an alleged fraudulent deed to hinder, delay, and defraud his creditors, made by the debtor to his wife prior to the date on which the accounts receivable were assigned to the plaintiff, and also a subsequent loan deed made by the wife to counsel of the defendant to secure an indebtedness due by her to them, the trial judge did not err in sustaining the general demurrer of the defendants to so much of the petition as sought such equitable relief. . . .

213 Ga. at 784 (1). Thus, it seems clear that prior to the enactment of the UFTA,[5] an assignee of debt was precluded from setting aside a deed in equity even if it was claimed that the property was conveyed to hinder and defraud creditors.

_____

[5] *NeSmith* was issued in 1958, and the UFTA was first enacted in 2002. See Ga. L. 2002, p. 141, § 3. Previously, fraudulent transfers were governed by the Code of 1933, § 28-201, which provided in pertinent part, that

The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz: . . . (2) Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking.

This provision was first codified in the Act of 1818, and was in effect at the time that *NeSmith* was issued although not specifically cited in *NeSmith*.

6

The question then becomes whether *NeSmith* has been superseded by the UFTA, and we find that the plain language of the UFTA supplies the answer. Former OCGA § 18-2-80 (a)[6] provided:

> Unless displaced by the provisions of this article, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

Based on our review of the UFTA, we do not find any clear indication in its language that displaces *NeSmith*'s construction of the non-assignment statute, which fraud provisions have not been amended in any material way. See *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 364 (729 SE2d 378) (2012) ("The actual canon of statutory construction is 'that statutes in derogation of the common law must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute.'") (citation and punctuation omitted). Thus, we are constrained to hold that under *NeSmith*, an assignee of debt is precluded from

---

[6] This section was re-codified at OCGA § 18-2-82 in connection with the 2015 amendments. See Ga. L. 2015, p. 996, § 4A-1.

7

pursuing a fraudulent transfer claim even though the assignee meets the definitions of a "creditor" with a "claim" under the UFTA.[7]

RES-GA attempts to distinguish *NeSmith* on the grounds that RES-GA has a judgment against Golshani whereas the assignee in *NeSmith* did not. See *First State Bank of Northwest Arkansas v. McClelland Qualified Personal Residence Trust*, No. 5:14-CV-130 (MTT), 2014 WL 6801803 (II) (B) (1) (M.D. Ga. 2014) (*NeSmith* did not preclude claim by creditor that had been assigned the FDIC's interest in loans and the related judgment against defendants).[8] But *NeSmith* did not turn on whether the assignee had obtained a judgment; instead, the Court, in explaining its reasoning, relied on the non-assignment statute and *Marshall v. Means*, 12 Ga. 61 (1852) for the proposition that "'[a] bare right to file a bill (in equity) or maintain a suit is not

---

[7] Although RES-GA asserts that denying standing to an assignee undermines the public policy of this State in favor of creditors' rights, "[w]hen we consider the meaning of a statute, we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning." (Citation and punctuation omitted.) *Carter v. Progressive Mountain Ins.*, 295 Ga. 487, 489-490 (761 SE2d 261) (2014). To the extent such public policy exists, it cannot contravene the plain meaning of the text of the statute.

[8] As a state appellate court, we are not bound by the decisions of the federal district courts. See *Gresham v. Harris*, 329 Ga. App. 465, 467 (765 SE2d 400) (2014). To the contrary and as a general matter, this Court adopts such federal decisions only when they are not in conflict with our own legal precedent. See *Russell v. Parkford Mgmt. Co.*, 235 Ga. App. 81, 82 (2) (508 SE2d 454) (1998).

8

assignable.'" *NeSmith*, 213 Ga. at 784 (1). Thus, the key inquiry for the Court appeared to be the equitable nature of the claim and its basis in fraud, rather than the source of the creditor's rights vis-à-vis the debtor, and we do not find it material that RES-GA, as an assignee, subsequently obtained a judgment against Golshani.

(b) Our conclusion is further supported by the 2015 amendments to the UFTA. The term "creditor" is now defined as "a person who has a claim, *regardless of when the person acquired the claim, together with any successors or assigns*." OCGA 18-2-71 (4) (additional language italicized). And an additional section (c) was added to OCGA § 18-2-74 in the 2015 amendment, providing that "[i]f a creditor is a successor or assignee, a right of action under subsection (a) of this Code section is automatically assigned to such successor or assignee." We note that these additions were not circulated by the Uniform Law Commission in their 2014 version of the Uniform Voidable Transactions Act and thus appear to be specific to Georgia.[9] And the General Assembly has made it clear that the amendments only apply to transfers

---

[9] The Uniform Voidable Transactions Act, as amended in 2014 by the Uniform Law Commission, can be found at http://www.uniformlaws.org/shared/docs/Fraudulent%20Transfer/2014_AUVTA_Final%20Act.pdf.

made or obligations incurred on or after July 1, 2015 and only to a right of action accruing after July 1, 2015. See Ga. L. 2015, p. 1029, § 7-1 (d).

"The General Assembly is conclusively presumed to know the law which they seek to amend, revise, repeal, or modify . . . and the construction of such law by our courts of last resort." *Jacobs v. State*, 200 Ga. 440, 444 (37 SE2d 187) (1946). See also *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 93 (327 SE2d 188) (1985). And "we must presume that the legislative addition of language to the statute was intended to make some change in the existing law." *Wausau Ins. Co. v. McLeroy*, 266 Ga. 794, 796 (2) (471 SE2d 504) (1996). Given *NeSmith* and the addition of previously nonexistent language in the statute, we must presume that the 2015 amendments were intended to change the law, and since the amendments specifically allowed assignees and successors to debt to pursue fraudulent transfer claims, it follows that under the previous version of the UFTA, such assignments were not allowed. See *Board of Assessors of Jefferson County v. McCoy Grain Exchange, Inc.*, 234 Ga. App. 98, 100 (505 SE2d 832) (1998) (prior law had different meaning because additional language in statute intended to change meaning).

RES-GA asserts that the 2015 amendments simply clarified the existing law and urges us to apply the principle of statutory construction that

[i]n construing the meaning of ambiguous language in a Code section, we must look, where possible, to the original act; the language of the section should be construed as intending to state the previously existing law and not to change it unless such a purpose clearly manifests itself.

*Aldrich v. City of Lumber City*, 273 Ga. 461, 464 (542 SE2d 102) (2001). However, we do not find the language in the 2015 amendments to be ambiguous. Moreover, the UFTA was silent on the issue of whether fraudulent transfer claims were assignable and the law under *NeSmith* was that such claims were not assignable; thus, the entirely new language added in 2015 cannot be considered a "clarification" of the existing law. Nor does it appear from the language of the amendments that the General Assembly intended that they have retroactive effect as they are to apply to transactions and claims arising after July 1, 2015. Accordingly, we find no error in the trial court's grant of summary judgment to Golshani on this basis.

2. RES-GA also asserts that the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989 authorizes assignment of fraudulent transfer claims and preempts OCGA § 44-12-24. However, RES-GA failed to raise this issue in the trial court. "[A]bsent special circumstances, an appellate court need not consider arguments raised for the first time on appeal." *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (573 SE2d 389 (2002). These special circumstances

11

include "a jurisdictional challenge, a claim of sovereign immunity, a serious issue of public policy, a change in the law, or an error that works manifest injustice." (Citation and punctuation omitted.) Id. at 829, n. 10. Despite RES-GA's arguments that it would be unfair to preclude them from pursuing a fraudulent transfer claim against Golshani, we find no special circumstances to warrant considering this argument and conclude that RES-GA has waived this new argument for the purpose of appeal.

*Judgment affirmed. Andrews, P. J., and Barnes, P. J., concur.*