**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 28, 2016**

# In the Court of Appeals of Georgia

A15A2313. MERRILL RANCH PROPERTIES, LLC v. AUSTELL et al.

MCMILLIAN, Judge.

Appellant Merrill Ranch Properties, LLC ("Plaintiff" or "Appellant") brought suit[1] against appellees[2] seeking, among other things, to set aside certain transfers and conveyances that Plaintiff contends were made in violation of Georgia's Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq. (the "UFTA").[3] The trial court

---

[1] Plaintiff's initial complaint was filed on July 30, 2012, and amended numerous times to add additional claims against additional defendants.

[2] There are numerous appellees listed on the notice of appeal and the relevant parties will be more specifically identified below.

[3] We will refer to the operative provisions of the UFTA as they existed at the time the challenged transfers were made and the complaint was filed, while noting that the UFTA has since been amended in 2015 and is now called the Uniform Voidable Transactions Act ("UVTA"). See Ga. L. 2015, p. 996, § 4A-1 (effective July 1, 2015).

granted summary judgment to appellees, and Plaintiff filed this appeal. We now affirm in part, reverse in part, and remand for further proceedings as more fully set forth below.

The underlying facts, although somewhat complex and confusing,[4] are largely undisputed.[5] In 2006, the Peoples Bank of Winder, Georgia ("Peoples Bank") extended a $100 million revolving line of credit (the "Loan") to WHM Merrill Ranch Investments LLC (the "Borrower"). The Loan was evidenced by a Loan Agreement dated September 28, 2006 and a Promissory Note executed "of approximately even date herewith"; it was secured by certain real property located in Arizona. The Loan was guaranteed by real estate developer W. Harrison Merrill ("Harrison Merrill") and

---

[4] Some of the confusion in this case stems from the frequency in which "Merrill" appears as part of the name of the persons or entities involved or referenced in this case, including Plaintiff and various defendants, and from the fact that a number of the trusts and LLCs involved and referenced in this case also have overlapping names. We have attempted to simplify the facts whenever possible, and have eliminated details that, while possibly pertinent to post-appeal or potential post-summary judgment proceedings, are not relevant to our analysis.

[5] "This Court reviews the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant." *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 31 (766 SE2d 497) (2014).

2

eight trust entities[6] he controlled (collectively "Guarantors"). In addition to Peoples Bank, numerous other banks held participation interests in the Loan.

Over time, $89 million was extended to the Borrower under the Loan. However, the Borrower was unable to make the required payments on the debt, and the Loan was declared in default on or around September 26, 2008. A few months later, in February 2009, Peoples Bank purchased by credit bid the Arizona property securing the Loan, and in April 2009, Peoples Bank instituted proceedings in Arizona against the Borrower and Guarantors to recover the deficiency owing after the sale of the property (the "Arizona litigation").

While the Arizona litigation was pending, on September 28, 2009, Peoples Bank entered into a written agreement with a "Steering Committee of Subparticipant Lenders," to sell its interest in the Loan and collateral ("Agreement"). The Agreement expressly provided that an unidentified legal entity would be created prior to closing to consummate the transaction, and Plaintiff was formed about a month later for this

---

[6] The trust Guarantors were a single trust created under Line Item Nine of the Will of Arthur Jesse Merrill ("the Item Nine Will Trust"), and seven "breakout" trusts — WHM Management Trust; WHM Merrill Ranch Trust; Merrill Communities & Resorts Trust (MCRT); WHM Chattahoochee Hills Trust; WHM Copper Mountain Trust; WHM Paloma Trust; and WHM Sky Valley Trust. The breakout trusts were created from the original Item Nine Will Trust as part of an organizational restructuring in 2006.

purpose. On October 28 and 29, 2009, Peoples Bank executed a series of documents, including an allonge to the note, which transferred and assigned its interests in the Loan to Plaintiff, and Plaintiff wired the purchase money for the Loan to Peoples Bank.

After Plaintiff was substituted for Peoples Bank in the Arizona litigation, the parties settled the suit for $10 million, plus post-judgment interest, and the judgment was entered accordingly on June 14, 2011.[7] Plaintiff petitioned to domesticate the judgment in the Superior Court of Fulton County, Georgia and on August 15, 2011, the court entered an order domesticating the Arizona judgment.

During post-judgment discovery, Plaintiff determined that shortly after the Loan was declared in default in September 2008, three limited liability companies with corporate relationships to Merrill companies[8] made transfers of unsecured real property (collectively the "2008 LLC Real Estate Transfers") to various newly-created entities that were, in turn, directly or indirectly "owned" by trusts established

---

[7] The defendants in the Arizona litigation — i.e., the original Borrower and Guarantors of the Loan, will hereinafter be referred to as "Judgment Debtors."

[8] The 2008 Real Estate Transfers were made by WHM Paloma Investments, LLC; WHM Sky Valley Investments LLC; and Indian Creek Resort LLC. These entities will be referred to as the 2008 LLC Real Estate Transferors.

for the benefit of Harrison Merrill, his then-wife whom he was in the process of divorcing, and his five children ("Children's Trusts"). Although the 2008 LLC Real Estate Transferors were neither guarantors of the Loan nor Judgment Debtors and the property transferred had not been pledged to secure the Loan, the LLC Real Estate Transferors were at least partially owned by several of the Judgment Debtors.

Additionally, Plaintiff discovered that at the beginning of 2010, the Item Nine Will Trust, which is one of the Judgment Debtors, transferred its membership interests in five limited liability companies to the Merrill Family Partnership, LLC, which was "owned" by the Children's Trusts ("Item Nine Will Transfer"). And another transfer also occurred sometime at the beginning of 2010[9] when Merrill Mining LLC, transferred stock it owned in S-Corporation Florence Copper Mining Inc.[10] either directly or indirectly to the Children's Trusts ("Merrill Mining Transfer"). Although neither Florence Copper nor Merrill Mining were guarantors of

---

[9] Although the stock transfer documents were dated June 8, 2008, evidence was presented that the documents were actually executed between June 1, 2009 and February 18, 2010, and there now appears to be some agreement between the parties that this transfer took place sometime in January or February 2010; accordingly, we will assume likewise for the purpose of this appeal.

[10] Florence Copper Mining Inc. was not named as a defendant below and is not a party to this appeal.

the Loan or Judgment Debtors, Judgment Debtor MCRT was a member of Merrill Mining, LLC.

On July 30, 2012, Plaintiff filed its initial complaint[11] under the UFTA seeking to set aside or impose a constructive trust on the assets involved in the Merrill Mining Transfer. Shortly before the suit was filed, on March 9, 2012, and then after the suit was filed on December 19, 2013, Plaintiff obtained charging orders against the membership and ownership interests of various Judgment Debtors in numerous limited liability companies,[12] including the 2008 LLC Real Estate Transferors and the Merrill Mining Transferor.

Plaintiff amended its complaint several times, and on January 9, 2014, Plaintiff filed a motion and proposed amended complaint to add additional defendants and/or

---

[11] Judgment Debtors MCRT and Harrison Merrill, and non-judgment debtors Merrill Mining, LLC, the Trustees of the Children's Trusts, and Harrison Merrill's children were named as defendants in the initial complaint. Plaintiff alleges that as a result of this transfer, proceeds from the imminent sale of the mining rights owned by Florence Copper were distributed to the Children's Trusts instead of Merrill Mining, LLC, who would have, according to Plaintiff, then been required by its Operating Agreement to distribute the proceeds to Judgment Debtor MCRT.

[12] Pursuant to OCGA § 14-11-504 (a), "[o]n application to a court of competent jurisdiction by any judgment creditor of a member or of any assignee of a member, the court may charge the limited liability company interest of the member or such assignee with payment of the unsatisfied amount of the judgment with interest."

6

fraudulent transfer claims based on the 2008 Real Estate Transfers and the 2010 Item Nine Will Transfer. On April 22, 2014, the trial court granted Plaintiff's motion to amend, and on April 29, 2014, Plaintiff amended its complaint to add these fraudulent transfer claims and defendants.

Subsequently, the parties filed opposing motions for summary judgment, and following a hearing, the trial court denied Plaintiff's summary judgment motion and granted Appellees' motion, entering judgment in favor of Appellees on all claims. The trial court based its ruling on the following findings: (1) the Loan assignment to Plaintiff was ineffective and thus Plaintiff was not the holder of the Loan; (2) even if the assignment of the debt was proper, the fraud claims were not assignable as a matter of law; (3) Plaintiff lacked standing under the UFTA because it was not a creditor or subsequent creditor of the non-judgment debtor LLC transferors; and (4) the Loan, domesticated Arizona Judgment, and charging orders did not create "a direct nexus" or basis of direct liability between Plaintiff and the LLC transferors. As more fully set forth below, we now reverse in part and affirm in part the trial court's order and remand for further proceedings consistent with this opinion.

1. As a preliminary matter, we must decide if the Loan was properly assigned to Plaintiff. To answer this question, we must determine if, as the trial court found,

the assignment of the Loan to Plaintiff was ineffective because Peoples Bank had already assigned the Loan to the Steering Committee pursuant to the terms of the Subparticipant Agreement.

We begin our analysis by turning to the relevant provisions of the Agreement, which we review under the usual rules of contract construction, *JBM Investments, LLC v. Callahan Indus., Inc.,* 293 Ga. App. 580, 582 (1) (667 SE2d 429) (2008), mindful that "[w]here contract language is unambiguous, construction is unnecessary, and the court simply enforces the contract according to its clear terms." (Citation and punctuation omitted.) *Losey v. Prieto*, 320 Ga. App. 390, 391 (739 SE2d 834) (2013). Contrary to the trial court's findings, the Subparticipant Agreement did not effect an immediate transfer and assignment of the Loan by People's Bank to the Steering Committee of the subparticipant banks. Rather, the unambiguous terms of the Agreement show that the actual transfer and assignment of the Loan was to be made at a future date. For example, the Agreement expressly provides that the Seller's rights in the Loan and Loan documents would be sold, transferred, assigned and conveyed *"[u]pon* satisfaction of the terms and conditions contained herein, . . ." including a due diligence review conducted to the "Buyer's" satisfaction of the relevant documents. (Emphasis supplied.) Further, the Agreement also expressly

8

provides that a not-yet-in-existence entity, such as the Plaintiff, would be created by the Buyer for the purpose of actually consummating the transaction, defined in the Agreement as the Closing. The evidence appears undisputed that the Plaintiff was formed about a month later to close the Loan, and that the only "Closing" that took place occurred on or about October 28, 2009, when an allonge[13] was executed, the guaranties and security instruments were transferred and assigned to Plaintiff, and Plaintiff wired the purchase money to Peoples Bank.

"A party may assign to another a contractual right to collect payment, including the right to sue to enforce the right. But an assignment must be in writing in order for the contractual right to be enforceable by the assignee." (Citation and punctuation omitted.) *Hosch v. Colonial Pacific Leasing Corp.*, 313 Ga. App. 873, 874 (2) (722 SE2d 778) (2012); *Ware v. Multibank 2009-1 RES-ADC Venture, LLC,* 327 Ga. App. 245, 251-52 (4) (758 SE2d 145) (2014). Here, the transfer and assignment of the Loan occurred with the execution of the allonge and other documents from Peoples Bank to Plaintiff. Accordingly, the trial court erred by granting summary judgment to

---

[13] "An allonge is a piece of paper attached to a promissory note on which parties write endorsements for which there is no room on the instrument itself." (Citation omitted.) *Milestone v. David*, 251 Ga. App. 832, 832, n.1 (555 SE2d 163) (2001).

9

Defendants based on a finding that the Loan had not been effectively assigned to Plaintiff.[14]

2. That does not end our inquiry, however, because the trial court also cited other reasons why the Plaintiff lacked standing to pursue its claims. We begin this portion of our analysis by looking to the relevant provisions of the UFTA.

At the pertinent time, OCGA § 18-2-74 (a) (1) (2014), the actual fraud provision of the UFTA pursuant to which Plaintiff filed its claims, provided as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor."[15]

---

[14] The Defendants also make the additional argument that, even assuming the Loan was properly assigned to Plaintiff, there was no evidence presented that the claims at issue in this case were assigned to Plaintiff. But this argument is unavailing as to the Judgment Debtors named as parties in this case, as they are bound by the Arizona Judgment, which was entered by consent and domesticated in Georgia after Plaintiff was substituted as a party in the Arizona litigation. Moreover, we need not parse this issue as to the non-judgment debtors since Plaintiff's UFTA claims fail against them for other reasons as set forth in Divisions 2 and 3.

[15] Whether a transfer is made with actual intent to defraud a creditor is determined by reference to subsection (b) of OCGA § 18-2-74, which contains a non-exhaustive list of factors, commonly called the "badges of fraud," which may be

10

Thus, a *creditor* is entitled to seek relief[16] under the UFTA for *transfers* made, or obligations incurred, *by a debtor* with actual intent to hinder, delay, or defraud *any* creditor of the debtor. However, while under the UFTA, a fraudulent transfer claim can only be brought by a "creditor" against a "debtor," the UFTA contains broad definitions of those terms. A "creditor" is a "person who has a claim"; a debtor is a "person who is liable on a claim"; and a "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." OCGA § 18-2-71 (3), (4), (6) (2014); *RES-GA Hightower, LLC v. Golshani*, 334 Ga. App. 176, 178 (1) (a) (778 SE2d 805) (2014), cert denied, January 11, 2016.[17] The UFTA also includes an expansive definition of "transfer," which includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting

considered in determining intent to defraud. See *Target Corp. v. Amerson*, 326 Ga. App. 734, 737 (1) (755 SE2d 333) (2014). The transferors' intent was not addressed by the trial court and is not an issue in this appeal.

[16] The relief available to a creditor under Georgia's UFTA against a fraudulent transfer is set out in OCGA § 18-2-77, and includes, among other things, avoidance of the transfer to the extent necessary to satisfy the creditor's claim and attachment against the asset transferred or other property of the transferee.

[17] Thus, Georgia's version of UFTA does not distinguish between creditors who hold judgments against persons liable to them on a debt and those who do not.

11

with an asset or an interest in an asset and includes payment of money, release, lease, and creation of a lien or other encumbrance." OCGA § 18-2-71 (12) (2014). And "asset" is defined as "property of a debtor" with certain exceptions. OCGA § 18-2-71 (2) (2014).

Applying these definitions here, it is clear that Plaintiff meets the definition of a "creditor" under the UFTA with respect to the Judgment Debtors, who were the original Borrower and Guarantors of the Loan, and appellees make no contention otherwise. But only one of the transfers in this case — the Item Nine Will Trust Transfer — was made by a Judgment Debtor.[18] The question then is whether Plaintiff is a creditor with standing to seek relief under the UFTA with regards to the other four transfers, which were made by non-judgment debtor limited liability companies. According to Plaintiff, it became a creditor of these non-judgment debtor LLC transferors by virtue of the charging orders, which created a "right to payment" from, and thus, according to Plaintiff, a "claim" against, any LLC entity named in the

---

[18] Instead, Appellees argue this claim must fail because it is time-barred under OCGA § 18-2-79 (1) of the UFTA. We will address this contention in Division 4.

12

charging orders, including the LLCs who made the 2008 Real Estate Transfers and the 2010 Merrill Mining Transfer.[19]

Plaintiff misapprehends the nature of a charging order. As we recently explained in *Gaslowitz v. Stabilis Fund I, LP*, 331 Ga. App. 152,152, n.2 (770 SE2d 245) (2015),[20] "[a] charging order is [simply] a statutory provision [found in OCGA § 14-11-504] 'that enables the judgment creditor (of a member of a limited liability company) to realize the value of the judgment debtor-member's distributional interest, while at the same time protecting both the (limited liability company's) ability to operate and the interests of the other members.' 51 AmJur2d Limited Liability Companies § 23." "Thus, from the limited liability company's standpoint, it is business as usual except that any distributions to the member subject to the charging order are *diverted* to the judgment creditor." (Emphasis supplied.) *Mahalo*

---

[19] Although Plaintiff cites to both the Arizona and Georgia limited liability company acts and charging order provisions, A.R.S. § 29-601 et seq. and Chapter 11 of Title 14 of the Georgia Code, the charging orders in this case were issued by a Georgia court and make no reference to the Arizona statute. Thus, we will confine our analysis to Georgia's charging order statutes.

[20] In *Gaslowitz*, we held that a judgment creditor of a member of an LLC has no right to seek an accounting of the assets of the LLC. 331 Ga. App. at 155 (2).

13

*Investments III, LLC v. First Citizens Bank & Trust Co., Inc.,* 330 Ga. App. 737, 743

(769 SE2d 154) (2015).[21]

> Importantly for the issue we must decide in this case,
>
> [a] charging order . . . gives no direct remedy against company property,
> *Nigri v. Lotz*, 216 Ga. App. at 205 (2), and company assets . . . would
> not be subject to satisfaction of [a member's individual] debt. "A
> member has no interest in specific limited liability company property."
> OCGA § 14-11-501 (a). See generally *Acree v. McMahan*, 276 Ga. 880,
> 881 (585 SE2d 873) (2003) (a third-party creditor may not disregard
> corporate form so as to reach corporate assets to satisfy claims against
> an individual corporate insider); *Word v. Stidham*, 271 Ga. App. [435,
> 437 (609 SE2d 651) (2004)] ("[T]he holder of an interest in [a limited
> liability] company has no interest in specific property owned by the
> company.")

Gaslowitz, 331 Ga. App. at 156 (2).

---

[21] The issue in *Mahalo* was whether an application for a charging order against a member's distributional interests in a LLC must be filed by the judgment creditor as a separate action, apart from the original action in which the judgment creditor obtained the judgment against the member of the LLC, and in a court with jurisdiction over the LLC. We concluded that under the LLC charging order statute, it is only necessary for a court to have jurisdiction over the judgment debtor to have the authority to enter a charging order against the judgment debtor's distributional interests in an LLC, and that, therefore, an action for a charging order may be filed under the same case number and in the same court that issued the original unsatisfied judgment against the debtor. *Mahalo*, 330 Ga. App. at 743.

It is clear from the foregoing that a charging order does not create a debtor-creditor relationship between the judgment creditor who obtained the charging order and the LLC whose member's interests are being charged. However, in its reply and supplemental briefs to this Court, Plaintiff makes additional arguments concerning its standing to challenge the LLC transfers, starting with the general premise that LLCs are not immune from claims under the UFTA. We agree that LLCs are not immune from claims under the UFTA *if* a debtor-creditor relationship exists between the person seeking relief under UFTA and the LLC (e.g., if the LLC owed a debt to the plaintiff). But where, as in this case, a creditor of a member of the LLC does not also have a debtor-creditor relationship with the LLC, the creditor does not also become a creditor of the LLC by obtaining a charging order against the LLC. Accordingly, the creditor does not have standing under the UFTA to set aside a transfer of assets made by the LLC solely by obtaining a charging order against the LLC.

Plaintiff also argues that it has standing under the UFTA to set aside the Merrill Mining Transfer because Judgment Debtors Harrison Merrill and MCRT, through its trustee, "participated" in the transfer by "instruct[ing]" that the transfer be made and executing the necessary documents. As stated above, a transfer is broadly defined

15

under OCGA § 18-2-71 (12) of the UFTA to include both direct and indirect transfers of an asset or an interest in an asset, and an asset is defined as property of the debtor. Thus, under the plain language of the UFTA, participating or even directing that a transfer of property be made has no consequence unless the asset was property of the debtor, which it was not here. And although as Plaintiff argues, our Supreme Court in *Bishop v. Patton*, 288 Ga. 600, 608, n.5 (706 SE2d 634) (2011), overruled in part on other grounds, *SRB Investment Svcs., LLLP v. Branch Banking and Trust Co.*, 289 Ga. 1, 5 (3), n.7 (709 SE2d 267) (2011), has recognized that the transfer need not be made by the debtor directly, that case involved the withdrawal of funds by the debtor's son in a jointly owned bank account and is thus readily distinguishable because the funds being transferred were actually property of the debtor (as well as the son/joint account holder).

Moreover, although Plaintiff disavows that it is proceeding under an "alter ego" theory, Plaintiff is essentially asking to disregard the corporate form and find that a creditor of a member of an LLC is also a creditor of the LLC for purposes of attaching the LLC's assets and preventing their transfer in order to satisfy the debt. In a somewhat different context, our Supreme Court has held that a creditor may not reach the assets of a corporation or LLC to satisfy a debt of one of its shareholders

16

or members. *Acree v. McMahan*, 276 Ga. 880, 881 (585 SE2d 873) (2003). See also

*Otero v. Vito*, 2009 U. S. Dist. LEXIS 86638, at \*19 (M.D. Ga. 2009) (citing *Acree*,

held that Georgia law does not recognize "reverse veil-piercing," that is, piercing of

the veil to the extent that it would allow an 'outsider,' such as a third party creditor,

to pierce the veil in order to reach a corporation's assets to satisfy claims against an

individual corporate insider); see generally *In re Christine M. Stadler*, No. 04-91944,

2005 Bankr. LEXIS 571, at \*3 (Bankr. N.D. Ga. March 30, 2005) (LLC in which

debtor in bankruptcy was the sole member was not itself a debtor subject to the

automatic stay provisions of the Bankruptcy Code). We find that authority persuasive

here.

Based on the foregoing, we agree with the trial court that the Plaintiff did not

have standing under the UFTA to set aside the transfer of assets made by the non-

judgment debtors in the 2008 Real Estate Transfers or the 2010 Merrill Mining LLC

Transfer. Accordingly, the trial court properly granted summary judgment to

Defendants on these claims.

3. Defendants further argue that, as the trial court found, an additional ground

exists to grant summary judgment on Plaintiff's claims to set aside the allegedly

fraudulent 2008 Real Estate Transfers which, in addition to being made by a non-

17

judgment debtor, were made before the Loan was assigned to Plaintiff in 2009. Specifically, Defendants argue that Plaintiff's claims to set aside these pre-Loan assignment transfers also fail under our Supreme Court's long-standing precedent in *Security Feed & Seed Company of Thomasville, Inc. v. NeSmith*, 213 Ga. 783 (102 SE2d 37) (1958).

Applying *NeSmith*, we recently considered this exact issue in *RES-GA Hightower, LLC v. Golshani*, in which we determined whether "an assignee to a debt [has] standing to assert a claim that the debtor fraudulently conveyed property in violation of . . . the UFTA." 334 Ga. App. at 176. Although noting that "under the plain terms of the UFTA, an assignee to debt ordinarily would qualify as a 'creditor' who has a 'claim,'"[22] id. at 178 (1) (a), we were nevertheless constrained by *NeSmith* and our Supreme Court's interpretation of Georgia's Anti-Assignment Statute, OCGA § 44-12-24, to hold that because such claims are not assignable under Georgia law, an assignee of debt is precluded from pursuing a pre-assignment fraudulent transfer claim under the UFTA. *Golshani*, 334 Ga. App. at 180 (1) (a).

_____

[22] For purposes of this analysis only, and notwithstanding our holding in Division 2, we will assume a debtor-creditor relationship existed between the transferors of the 2008 Real Estate Transfers and the Plaintiff.

Although Plaintiff makes a number of arguments[23] in an attempt to limit the application of *NeSmith*, we previously considered and rejected the same or substantially similar arguments in *Golshani*. Moreover, Plaintiff's attempt to distinguish *Golshani* as "irrelevant" to the present case by arguing that our opinion "presumes that there is a contract which actually assigns a claim of fraud or fraudulent transfer" (emphasis deleted) is likewise unavailing. *Golshani* and the present case are factually indistinguishable insofar as both involve standing to assert a fraudulent transfer claim based on the assignment of a debt.

It is also important to note, as we did in *Golshani*, that the General Assembly amended the UFTA in 2015 so that the term "creditor" is now defined as "a person who has a claim, *regardless of when the person acquired the claim, together with any successors or assigns.*" OCGA § 18-2-71 (4) (additional language italicized). Additionally, the 2015 amendment added subsection (c) to OCGA § 18-2-74, so that section now provides that "[i]f a creditor is a successor or assignee, a right of action under subsection (a) of this Code section is automatically assigned to such successor

---

[23] *Golshani* was decided on October 16, 2015, and appellant's initial brief to this Court in this case was filed on August 31, 2015 and its reply brief was filed on October 8, 2015. Thus, appellant first posited these arguments in its supplemental brief filed after oral argument.

19

or assignee." However, these amendments only apply to transfers made or obligations incurred on or after July 1, 2015, and only to a right of action accruing after July 1, 2015, and are of no effect here. See Ga. L. 2015, pp. 996, 1029, § 7-1 (d). Accordingly, based on the foregoing, we affirm the trial court's order to the extent it determined that Plaintiff does not have standing under the UFTA to contest the transfers that occurred prior to the assignment of the Loan.

4. Lastly, we turn to the only transfer at issue in this case that was made by a Judgment Debtor — the Item Nine Will Trust Transfer. Although Defendants acknowledge, at least implicitly and assuming the Loan was effectively assigned, that Plaintiff has standing as a creditor under the UFTA to pursue this claim, they argue that summary judgment was also properly granted as to this fraudulent transfer claim because it is time-barred pursuant to OCGA § 18-2-79 (1).[24] That section, which applies to claims such as the ones in this case brought under the actual fraud provisions of OCGA § 18-2-74 (a) (1), provides that "[a] cause of action with respect to a fraudulent transfer or obligation . . . is extinguished unless action is brought . . . within four years after the transfer was made or the obligation was incurred or, if

---

[24] Although raised below, the trial court was not required to reach this issue based on its determination that Plaintiff could not maintain any of its claims against any of the defendants because the assignment of the Loan was ineffective.

later, within one year after the transfer or obligation was or could have reasonably have been discovered by the claimant." OCGA § 18-2-79 (1) (2014).

The parties appear to agree that the Item Nine Will Transfer occurred on or about January 1, 2010, and the record shows that Plaintiff first sought to assert a claim based on this transfer on January 9, 2014, at the earliest, when it sought leave to amend its complaint. Thus, this claim is time barred unless Plaintiff is entitled to invoke the one year discovery period also included in OCGA § 18-2-79 (1), which begins to run when the transfer "was or could reasonably have been discovered" by the party seeking relief under the UFTA. As Defendants acknowledge, issues concerning a plaintiff's diligence usually must be resolved by the trier of fact, but nevertheless urge us to decide this issue as a matter of law. However, we decline to do so here in light of the fact that the record more than strongly suggests that efforts were made to conceal some or all of the transfers from Plaintiff and especially since the trial court has not considered this issue in the first instance. Accordingly, this case is remanded to the trial court for further proceedings on this issue.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes, P. J., and Ray, J., concur.*

21