[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15592
_____

D.C. No. 1:12-cv-02473-CAP

KEY EQUIPMENT FINANCE, INC.,
KEYBANK NATIONAL ASSOCIATION,

Plaintiffs-Appellees,

versus

GEORGE D. OVEREND,
CAROL C. OVEREND,
as Trustee of the Carol C. Overend Revocable Trust,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 28, 2016)

Before ED CARNES, Chief Judge, ANDERSON, Circuit Judge, and
CHAPPELL,* District Judge.

_____
*Honorable Sheri Polster Chappell, United States District Judge for the Middle District of
Florida, sitting by designation.

PER CURIAM:

Plaintiff-appellee KeyBank, N.A. ("KeyBank")[1] commenced this action against defendant-appellants George Overend and his wife, Carol Overend, in her capacity as trustee of the Carol C. Overend Revocable Trust (collectively "Overend"). KeyBank brought claims for breach of contract, attorney's fees, and fraudulent conveyance of Overend's interest in his home to his wife in her capacity as trustee. The operative facts of this appeal concern Overend's personal guarantee of business loans, made by KeyBank, to finance the construction of a now-bankrupt medical imaging center (Citrus Tower) in which he and a partner were joint investors.

After full briefing, the district court granted partial summary judgment to KeyBank on the issue of Overend's liability for breach of contract and attorney's fees. The court then bifurcated the remainder of the proceedings, first holding a bench trial to determine damages for the breach of contract. Following the bench trial, the court conducted a jury trial to determine whether Overend's transfer—of a one-half undivided interest in his home to his wife, as trustee of a revocable trust—was voidable as a fraudulent conveyance under Georgia law. The conveyance was

---

[1] The amended complaint was originally filed by Key Equipment Finance, Inc., which was then absorbed into KeyBank through merger. The district court granted a motion to substitute KeyBank as plaintiff in place of Key Equipment Finance.

made after Overend had incurred all of the relevant obligations, after he had signed

multiple forbearance agreements as a result of defaulting on those obligations, and

after Citrus Tower had petitioned for Chapter 11 bankruptcy protection.[2]

The jury ultimately found for KeyBank on the fraudulent conveyance claim.

On appeal, Overend argues that the district court's jury instruction misstated the

applicable Georgia law and impermissibly placed the burden of proof on him,

rather than on KeyBank as the party challenging the transfer. Having rejected each

of Overend's other challenges on appeal, supra note 2, our opinion considers only

this final assignment of error.

We review "jury instructions for abuse of discretion . . . as to the style and

wording employed" and "de novo to determine whether they misstate the law or

mislead the jury." Gowski v. Peake, 683 F.3d 1299, 1310 (11th. Cir. 2012).

Reversal is warranted only "if we are left with a substantial and ineradicable doubt

---

[2] Overend raises a number of challenges to the district court's decision to grant partial summary judgment, its determination of damages at the bench trial, and its conduct during opening arguments of the jury trial. For the reasons explored at oral argument, we summarily reject these arguments on appeal. Thus we reject Overend's argument that Wyoming law should have been applied under Georgia choice-of-law provisions, thereby rendering moot his argument that Wyoming law—unlike Georgia law—would have recognized a cause of action for KeyBank's gross negligence in disbursing the progress payments under the provisions of the financing documents. We also reject summarily Overend's challenge to the district court's findings at the bench trial with respect to the calculation of damages resulting from the breach of contract. Finally, we reject without hesitation Overend's argument that the district court committed reversible error by making certain statements during opening arguments in the jury trial.

as to whether the jury was properly guided in its deliberations." Bateman v.

Mnemonics, Inc., 79 F.3d 1532, 1543 (11th Cir. 1996).

Longstanding Georgia law provides that "when a transaction between a

husband and wife is attacked for fraud by the creditors of either, the onus shall be

on the husband and wife to show that the transaction was fair." O.C.G.A. § 19-3-10

(2016). Georgia courts, interpreting this provision, have long held that "[t]he

burden is on the husband and the wife to show that the transaction as a whole was

free from fraud[, a]nd it is for the jury to say whether the husband and the wife

carried their burden in this regard." Bonner v. Smith, 247 Ga. App. 419, 420–21,

543 S.E.2d 457, 460 (2000) (quoting Dearing v. A.R. III, Inc., 266 Ga. 301, 302,

466 S.E.2d 565, 566 (1996)).

In 2002, Georgia adopted the Uniform Fraudulent Transfer Act[3] ("UFTA")

which, among other things, created a new cause of action for fraudulent

conveyances. Importantly, the UFTA provides that "[u]nless displaced by the

---

[3] We will refer, unless otherwise noted, to the operative provisions of the UFTA as they existed at the time the complaint was filed. We are aware that the UFTA has since been amended and, among other changes, is now called the Uniform Voidable Transactions Act. See 2015 Ga. Laws 996, § 4A (effective July 1, 2015). Some of the changes resulting from this amendment are arguably procedural, see Polito v. Holland, 258 Ga. 54, 55, 365 S.E.2d 273, 274 (1988) ("Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations."), and could ordinarily be given retroactive effect under applicable Georgia law, see id., 365 S.E.2d at 273 ("[W]here a statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect absent an expressed contrary intention."). Here, however, the Georgia General Assembly clearly expressed a contrary intention—providing that "[t]he amendments made by [the relevant sections] shall: (1) Apply to a transfer made or obligation incurred on or after July 1, 2015; [and] (2) Not apply to a transfer made or obligation incurred before July 1, 2015." 2015 Ga. Laws 996, § 4A.

4

provisions of this article, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions." O.C.G.A. § 18-2-82 (2016). Neither the UFTA nor any other subsequent act has expressly repealed section 19-3-10.

There are three ways to establish a fraudulent transfer within the framework of the UFTA. The only one relevant to this appeal (on which the jury found for KeyBank) is by a finding that the transfer was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." O.C.G.A. § 18-2-74(a)(1) (2016). The UFTA contains a non-exhaustive list of eleven factors, which the district court provided to the jury, to aid in determining intent.  However UFTA did not, until the recent non-retroactive 2015 amendments, explicitly establish a burden of proof or allocate it to a specific party.

Against that legal backdrop, the district court provided the following charge to the jury to aid in its deliberations:

> Now, in this case it's the responsibility of KeyBank to prove every essential part of its claims by a preponderance of the evidence. This is sometimes called the burden of proof or the burden of persuasion.
>
> A preponderance of evidence simply means an amount of evidence that is enough to persuade you that Key's claim is more likely true than not true.
>
> . . .

5

When a creditor attacks a conveyance from a husband to a wife, slight circumstances may be sufficient to establish the existence of fraud. The burden is on the husband and wife to show that the conveyance as a whole is free from fraud.

. . .

In determining whether Mr. Overend transferred his property with actual intent to delay, hinder, or defraud his creditors, you may consider the following factors . . . .

One, whether the transfer or obligation was to an insider. And any relative of Mr. Overend is considered an insider if they are related within the third Levitical degree, which is nephews or closer.

Whether Mr.—second, whether Mr. Overend retained possession or control of the property, transferred—that is, the property transferred after the transfer, whether he retained possession or control.

Three, whether Mr. Overend disclosed or concealed the transfer.

Four, whether, because the transfer was made, Mr. Overend had been sued or threatened with suit.

Five, whether the transfer was substantially all of Mr. Overend's assets.

Six, whether Mr. Overend absconded.

Seven, whether he removed or concealed the assets.

Eight, whether the value of the consideration received by Mr. Overend was reasonably equivalent to the value of the asset transferred.

Nine, whether Mr. Overend was insolvent or became insolvent shortly after the transfer was made.

6

And, ten, whether the transfer occurred shortly before or shortly after a substantial debt was incurred.[4]

The jury received this instruction and, after deliberating for just over an hour, the court recessed for the evening. The next morning, the jury submitted a written question to the court, which, in relevant part, asked "with whom does the burden of proof lie?" After discussing the appropriate response to that question with counsel for both KeyBank and Overend outside the presence of the jury, the district court provided the following answer:

> In this case, it's the responsibility of KeyBank to prove every essential element of its claims by a preponderance of the evidence. And that's sometimes called the burden of proof or burden of persuasion. A preponderance of the evidence simply means an amount of evidence that is enough to persuade you that KeyBank's claim is more likely true than not true. If the proof fails to establish any essential part of a claim or a contention by a preponderance of the evidence, then you should find against KeyBank.
>
> . . .
>
> When a creditor attacks the conveyance from a husband to a wife, slight circumstances may be sufficient to establish the existence of a fraud. The burden is on the husband and wife to show that the conveyance as a whole is free from fraud.
>
> Go back to the jury room and continue deliberations.

After receiving that "clarification" the jury deliberated for just over an hour and thirty minutes before finding that Overend's conveyance to his wife, as trustee,

---

[4] The UFTA actually provides eleven factors for consideration. See O.C.G.A. § 18-2-74(b) (2016). Based on discussions during the charge conference, the district court omitted the eleventh.

7

was fraudulent. Overend timely appealed, arguing that the inclusion of the burden-shifting provision drawn from section 19-3-10 was in error.

As an initial matter, we have considerable doubt as to whether Overend fairly raised before the district court the argument that he finally articulated with any precision at all for the first time in his reply brief to this Court. Specifically, we are skeptical that the district court was squarely confronted with an argument presented on appeal, the most forceful elaboration of which comes for the first time in Overend's reply brief. Overend did argue in the district court, and again in his initial brief on appeal, that the UFTA was all-inclusive and thus that section 19-3-10 was old law that was displaced by the UFTA. However, his best effort to put this issue in front of the district court came not during the extensive discussions of the appropriate jury charge but, rather, during the court's consideration of KeyBank's motion for judgment as a matter of law. At that point Overend argued "that UFTA essentially repealed this . . . statute [section 19-3-10]" and, alternatively, that "[t]he UFTA covers all of this. It's inclusive." While this exchange could arguably have put the district court on notice of the general nature of his challenges to the jury instruction, Overend subsequently missed at least two clear opportunities to object to the inclusion of the burden-shifting instruction drawn from section 19-3-10. During the initial charge conference his only explicit objection to the inclusion of such an instruction was that the transfer at issue here

8

was between a husband and a trust, rather than between a husband and wife and

that, therefore, the instruction was inappropriate.[5] Likewise, when the court asked

for input from counsel as to how to respond to the question from the jury

concerning the burden of proof, Overend merely renewed his objection in blanket

terms and never articulated the arguments he makes on appeal.[6]

Moreover, and significantly, Overend did not clearly articulate his most

forceful argument until his reply brief to this Court. There, he suggests for the first

time (albeit even then in a single paragraph and without clarity) that the UFTA is

inconsistent with section 19-3-10 and that it was therefore impliedly repealed by

the adoption of the Uniform Act. The full elaboration of Overend's implicit repeal

argument is that the UFTA is inconsistent with section 19-3-10 because the latter

attributes burden-shifting significance to the fact that the transfer is to a spouse. By

contrast, the UFTA makes the fact that the transfer is to an insider (including a

spouse) merely one of eleven non-exclusive factors that the fact finder is instructed

to consider in determining whether the transfer was made with the intent to hinder,

---

[5] We note that Overend has raised a challenge on this basis once again on appeal. Like the district court, we have no trouble concluding that, if it survived the passage of the UFTA, section 19-3-10 undoubtedly applies to the transfer at issue here. The trust to which he made the transfer was freely revocable by his wife and, accordingly, we reject this argument.

[6] Overend also argues that the statutes cannot be reconciled because section 19-3-10 requires the spouses to prove that the transaction was "fair," but UFTA doesn't discuss fairness. Rather section 19-3-10 uses the word "fair" in the context of a suit by a creditor against a debtor over a transfer of property. Fair in that context means "fair to the creditor." And a transaction is surely fair to the creditor if it survives scrutiny under UFTA.

9

delay, or defraud creditors. However, because of the lack of timeliness and clarity with which Overend chose to raise this issue, it is unclear whether the arguments urged to this Court were ever fairly presented to the district court.

However, even assuming that the argument was properly preserved, we do not believe that Georgia courts would conclude that there was an implicit repeal of section 19-3-10 or that it was "displaced" by the terms of the UFTA. Under Georgia law, "[r]epeals by implication are not favored." Chatham Cty. v. Hussey, 267 Ga. 895, 895, 485 S.E.2d 753, 754 (1997). Implied repeals of a previously enacted statute "never occur unless (1) the later act clearly contradicts the former act and their differences cannot be reconciled or (2) the most recent enactment appears to cover the whole law on the subject and substitutes for every prior general, local, and special law relating to that subject matter." Id. The task of a reviewing court is to determine whether it is possible to construe the acts in pari materia or whether "they are so clearly and indubitably contradictory . . . they can not reasonably stand together." Rutter v. Rutter, 294 Ga. 1, 3, 749 S.E.2d 657, 658–59 (2013) (quoting Sutton v. Garmon, 245 Ga. 685, 687, 266 S.E.2d 497, 498–99 (1980)).

As an initial matter, nothing in the UFTA clearly contradicts the provisions of section 19-3-10. We conclude that a Georgia court would read them in pari

materia. Not until its non-retroactive[7] amendment in 2015 did Georgia's UFTA contain any provision concerning the burden of proof. Thus, the version of the Uniform Act in effect at all times relevant to this appeal did not clearly contradict section 19-3-10's allocation of the burden of proof in the context of spousal transfers. Moreover, we believe that Georgia courts would reconcile the provisions of the two statutes. The special context of a spousal transfer might well have been intended to require greater scrutiny than allegedly fraudulent transfers in other contexts, even to insiders other than a spouse. After all, it is a well-settled rule of statutory construction that "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent." State v. Nankervis, 295 Ga. 406, 409, 761 S.E.2d 1, 4 (Ga. 2014) (quotation marks omitted). So even if the general rule under UFTA is that the plaintiff bears the burden of proving that a transaction is voidable by a preponderance of the evidence, we believe Georgia courts would conclude that section 19-3-10's specific rule displaces that general rule in the context of spousal transfers. Additionally, the other ten factors that Georgia's UFTA sets out at section 18-2-74(b) – factors that are to be considered in determining whether a challenged transfer was made with actual intent to hinder, delay, or defraud creditors – can readily be considered in conjunction with the

---

[7] See supra note 3.

11

burden of proof provided for by section 19-3-10 in the context of a spousal transfer.

As to Overend's contention that Georgia's UFTA is "comprehensive" or "inclusive" such that we should find an implied repeal because the statutory framework appears to cover the whole law on the subject, we are unpersuaded. Quite the opposite, the express terms of the UFTA provide that existing "principles of law and equity . . . supplement its provisions." O.C.G.A. § 18-2-82 (2016) (emphasis added). Moreover, a recent addition to the Code section under which this cause of action arises, section 18-2-74, undermines Overend's argument that the UFTA is comprehensive and implicitly repeals older statutes involving fraudulent transfer claims. In the same 2015 legislation that added the burden of proof provision to the UFTA, the Georgia General Assembly added section 18-2-74(c), which expressly provides for the assignment of a fraudulent transfer claim to a successor or assignee of the original creditor. This provision was added precisely to avoid the application of an older Georgia statute, section 44-12-24, which provides that a cause of action for personal torts, including fraud on the assignor, cannot be assigned. The Georgia Assembly apparently did not believe that the comprehensive nature of the UFTA constituted an implicit rejection of the older statute's application to claims arising under the new Uniform Act. Rather, the General Assembly in 2015 deemed it necessary to enact a provision expressly

12

prohibiting application of section 44-12-24 in the context of fraudulent transfer claims. Indeed, the Georgia courts have so held. See RES-GA Hightower, LLC v. Golshani, 334 Ga. App. 176, 778 S.E.2d 805 (2015).

Golshani involved a suit brought by an assignee of the original creditor seeking to set aside as fraudulent a 2009 conveyance. The sole issue under consideration was whether the cases holding that section 44-12-24 makes causes of action challenging fraudulent transfers non-assignable had been superseded by the UFTA. The Georgia court noted that section 44-12-24 had been enacted before the UFTA's passage in 2002. Relying upon the express provision that existing "principles of law and equity . . . supplement" the provisions of the UFTA, the court held that the Uniform Act did not displace the prior law making such causes of action non-assignable. Id. at 179, 778 S.E.2d at 808. Indeed, the court noted the 2015 amendment to the UFTA—including the addition of section 18-2-74(c) permitting the assignment of a fraudulent transfer claim to a successor or assignee of the original creditor—was expressly applicable only to transfers made on or after July 1, 2015. The court held: "We must presume that the legislative addition of the language to the statute was intended to make some change in the existing law." Id. at 181, 778 S.E.2d at 809. Specifically, the court reasoned:

> Given . . . the addition of previously non-existent language in the statute [i.e. section 18-2-74(c)] we must presume that the 2015 amendments were intended to change the law, and since the amendments specifically allowed assignees and successors to pursue

13

fraudulent transfer claims, it follows that under the previous version of the UFTA, such assignments were not allowed.

Id.; accord Merrill Ranch Props., LLC v. Austell, 336 Ga. App. 722, 732–33, 784 S.E.2d 125, 133 (2016). Thus, the Georgia courts have at least implicitly rejected Overend's argument that the UFTA is sufficiently comprehensive such that previous statutes involving fraudulent transfer claims were implicitly repealed.

Accordingly, where the differences, if any, between two legislative enactments are readily reconciled and where the later enactment was not designed to occupy the field of fraudulent transfers, we will not find an implicit repeal of section 19-3-10 in contravention of established Georgia law. For these reasons we cannot conclude that the district court committed reversible error with respect to the challenged jury instruction. The judgment of the district court is affirmed in all respects.

AFFIRMED.