**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 14, 2017**

# In the Court of Appeals of Georgia

A16A1919. RES-GA YPL, LLC v. J. H. ROWLAND, III et al.

RICKMAN, Judge.

In this case alleging a violation of Georgia's Uniform Fraudulent Transfers Act, RES-GA YPL, LLC ("YPL"), as creditor, sued J. H. Rowland, III, as judgment debtor (the "Judgment Debtor"), as well as Marilyn Jones Rowland, Katherine Rowland Boudreau, Rowland Partners, L.P., Rowland Companies, Inc., and MJR Finance, LLC, as parties to various real estate transactions (appellees collectively referred to herein as the "Rowland Appellees"), seeking to set aside the transactions as fraudulent and requesting a declaratory judgment as to the superiority of its interest in certain real property. The trial court granted the Rowland Appellees' motion to dismiss the action. YPL appeals, contending that the trial court erred in dismissing

its lawsuit. For the reasons discussed below, we affirm in part and reverse in part the trial court's ruling.

This Court conducts a de novo review of a trial court's ruling on a motion to dismiss. See *Dove v. Ty Cobb Healthcare Systems, Inc.*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012).

> In doing so, our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts; however, we need not adopt a party's legal conclusions based on these facts.

(Punctuation and footnotes omitted.) Id.

The facts underlying YPL's complaint are somewhat complex. The pertinent background information and history of the parties necessary to put the allegations of the complaint into context are set forth below.

*I. The Parties*

YPL has a deficiency judgment against the Judgment Debtor in an amount greater than $2.1 million. Marilyn Jones Rowland ("M. Rowland") is the Judgment Debtor's mother, and Katherine Rowland Boudreau ("Boudreau") is the Judgment

Debtor's sister. Rowland Partners, L. P. (the "Limited Partnership") is a limited partnership of which it is undisputed that, at all times relevant to this action, M. Rowland and Boudreau were officers, owners, members, affiliates, and/or partners; YPL alleges, although the Rowland Appellees deny, that the Judgment Debtor also held a position in the Limited Partnership. Rowland Companies, Inc. is the general partner of the Limited Partnership. MJR Finance, LLC is a limited liability company of which M. Rowland was, at all times relevant to this action, an officer, owner, member affiliate, and/or incorporator; YPL alleges, although the Rowland Appellees again deny, that the Judgment Debtor also held a position in the company.

## II. Pertinent Background

In March 2007, a non-party limited liability company executed a promissory note to Alpha Bank and Trust, as lender, in order to obtain a loan totaling over $3.5 million (the "Note"). The Judgment Debtor executed a personal guaranty in which he guaranteed the repayment of the Note (the "Guaranty"). The Note was secured by a security deed that encumbered certain real property in Cobb County.

In 2008, Alpha Bank and Trust was declared insolvent, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. The FDIC, as receiver,

transferred and assigned the Note and Guaranty to a non-party limited liability company, which in turn assigned the Note and Guaranty to YPL in 2011.

The Note went into default, and YPL foreclosed on the collateral. The foreclosure sale was confirmed, and YPL thereafter filed a lawsuit against the Judgment Debtor seeking to recover a money judgment for the deficiency remaining on the Note. YPL obtained the judgment against the Judgment Debtor on August 28, 2012, and the judgment was reduced to a writ of fieri facias that was recorded on February 12, 2013. Payment of the judgment remains unsatisfied.

### III. The Transfers

The week following the entry of YPL's judgment against the Judgment Debtor, several "corrective" deeds (collectively, the "Corrective Deeds"), executed on September 4, 2012 and filed in the Superior Court of Burke County the following day, purported to cure numerous "defective" deeds (collectively, the "Defective Deeds") that the Rowland Appellees allege were signed in 2003 and that transferred four tracts of real property among and between them. These transfers (collectively, the "Transfers") form the basis of YPL's complaint and are set forth in detail below.

(A) *The Herndon Transfers*. The first in the series of "corrective" deeds was executed by M. Rowland and entitled "Corrective Executor's Deed." It purported to

"confirm" the conveyance of a 264-acre tract of real property (the "Herndon Tract") from M. Rowland, in her capacity as executor of her late husband's estate, as grantor, to herself (individually), the Judgment Debtor, and Boudreau, as grantees. Attached to the corrective deed was a defective deed purporting to make the same conveyance, which referenced the year 2003 in the opening paragraph and was allegedly signed by M. Rowland and her late husband. The defective deed was not otherwise dated, witnessed, or recorded.

The second "corrective" deed was entitled "Corrective Quitclaim Deed" and was executed by the Judgment Debtor and Boudreau, as grantors. It purported to "confirm" a conveyance of their shares of the Herndon Tract to the Limited Partnership, as grantee. As before, attached to the corrective deed was a defective deed referencing the year 2003, allegedly signed by the Judgment Debtor and Boudreau, purporting to make the same conveyance. That deed was not dated, witnessed, or recorded.

(B) *The Multi-Tract Transfers*. The third "corrective" deed was a "Corrective Quitclaim Deed" executed by M. Rowland purporting to "confirm" the conveyance of three separate parcels of real property totaling over 1,882 acres (the "Multi-Tract Property") from herself, as grantor, to the Judgment Debtor and Boudreau, as

5

grantees.[1] Again, attached to the corrective deed was a defective deed referencing the year 2003, allegedly signed by M. Rowland, purporting to make the same conveyance. That deed was not dated, witnessed, or recorded.

The fourth and final "corrective" deed was a "Corrective Quitclaim Deed" executed by the Judgment Debtor and Boudreau, as grantors, purporting to "confirm" the conveyance of the Multi-Tract Property to the Limited Partnership, as grantee. As with each of the others, attached to the corrective deed was a defective deed referencing 2003, allegedly signed by the Judgment Debtor and Boudreau, purporting to make the same conveyance. The deed was not dated, witnessed, or recorded.

(C) *The MJR Finance Security Deed*. On December 21, 2012, the Limited Partnership, as grantor, purported to convey an interest in both the Herndon Tract and the Multi-Tract Property (collectively, "the Properties") to MJR Finance, as grantee, via a security deed, in order to secure a note in the amount of $350,000 (the "MJR Finance Security Deed"). The MJR Finance Security Deed was recorded on December 26, 2012.

---

[1] The property description attached as an exhibit to the defective deed purportedly being "corrected" by the deed to the Multi-Tract Property is actually a legal description of the Herndon Tract. Because the parties do not dispute that the property involved in the second series of transfers was the Multi-Tract Property, we will assume that to be true for the purposes of this opinion.

On August 20, 2015, YPL filed the instant lawsuit seeking damages and to enforce its judgment by voiding the Transfers as violative of the Georgia Uniform Fraudulent Transfers Act, OCGA §§ 18-2-70 (2012) et seq. ("UFTA").[2] YPL also sought a declaratory judgment that it held an interest in the Properties superior to any alleged interest held by MJR Finance. Finally, YPL sought attorney fees and litigation costs pursuant to OCGA § 13-6-11.

The Rowland Appellees filed a motion to dismiss YPL's complaint,[3] asserting that YPL lacked standing under the UFTA to bring the action against the Judgment Debtor, failed to state a cause of action against M. Rowland, Boudreau, or Rowland

---

[2] The UFTA has since been amended and is now called the Uniform Voidable Transactions Act. See Ga. L. 2015, Act 167, § 4A-1. The amendments, however, apply only to transfers made or obligations incurred on or after July 1, 2015 and only to a right of action accruing after July 1, 2015. See Ga. L. 2015, pp. 996, 1029, § 7-1.

[3] Copies of each of the deeds and other record documents discussed herein were attached as exhibits to YPL's verified complaint and are thus properly considered for the purposes of the Rowland Appellees' motion to dismiss. See *Minnifield v. Wells Fargo Bank, N.A.*, 331 Ga. App. 512, 514 (2) (771 SE2d 188) (2015) ("When considering a motion to dismiss for failure to state a claim, a trial court may consider exhibits attached to and incorporated into the complaint and answer.") (citation omitted).

Companies, was time-barred from pursuing its UFTA claim by the applicable statute of limitations, and was not an "interested party" with standing to seek a declaratory judgment. The trial court granted the motion "for the reasons stated in [the Rowland Appellees'] brief," and this appeal follows.

## V. Discussion

1. *UFTA Claim.* The UFTA provides that, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." OCGA § 18-2-74 (a) (1) (2012). When determining a debtor's intent, consideration is given to, among other things, the factors set forth in OCGA § 18-2-74 (b) (2012),[4] which are commonly referred to as

---

[4] The "badges of fraud" include whether:
(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably

8

the "badges of fraud." See *RES-GA Hightower, LLC v. Golshani*, 334 Ga. App. 176, 178 (1) (a) (778 SE2d 805) (2015). The UFTA defines a "creditor" as "a person who has a claim,"[5] a "debtor" as "a person who is liable on a claim," and a "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." OCGA § 18-2-71 (3), (4), (5). A transfer made with an actual intent to defraud creditors may be avoided if the recipient did not take the transfer in good faith and for reasonably equivalent value. See OCGA §§ 18-2-74 (a) (1) (2012); 18-2-77 (a) (1) (2012), 18-2-78 (a) (2012); *Miller v. Lomax*, 266 Ga. App. 93, 100 (3) (596 SE2d 232) (2004).

---

equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

OCGA § 18-2-74 (b) (2012).

[5] The 2015 amendments to the UFTA now define the term "creditor" as "a person who has a claim, regardless of when the person acquired the claim, together with any successors or assigns." See Ga. L. 2015, Act 167, §4A-1, eff. July 1, 2015.

In its complaint, YPL alleged that the Judgment Debtor made the Transfers with the actual intent of hindering, delaying, or defrauding his creditors, and specifically alleged several "badges of fraud": the Transfers were made to insiders, were made after the Judgment Debtor had a judgment against him, consisted of substantially all of the Judgment Debtor's assets, were made without the Judgment Debtor's receipt of consideration for a reasonably equivalent value of the assets transferred, were made when the Judgment Debtor was insolvent or he became insolvent as a result of the Transfers, and occurred shortly after a substantial debt was incurred. See OCGA § 18-2-74 (b) (2012). YPL further alleged that the Rowland Appellees knew or should have known that the Judgment Debtor was insolvent and that the Transfers were made with the intent to hinder, delay, or defraud the Judgment Debtor's creditors.

A separate statute, OCGA § 44-12-24 (2012), prohibits the assignment of "[a] right of action . . . for injuries arising from fraud to the assignor." Reading this statute in conjunction with the UFTA, this Court has previously held that assignees of debt who otherwise qualified as "creditors" with "claims" under the broad definitions of the UFTA were nevertheless precluded by OCGA § 44-12-24 from pursuing a

fraudulent transfer claim.[6] See *Merrill Ranch Properties, LLC v. Austell*, 336 Ga. App. 722, 731 (3) (784 SE2d 125) (2016); *Golshani*, 334 Ga. App. at 179-80 (1) (a).

(A) The Rowland Appellees contend that OCGA § 44-12-24 (2014), in conjunction with the holdings of *Merrill Ranch Properties* and *Golshani*, bar YPL, as assignee of the Note and Guaranty, from pursuing an action under the UFTA.

Construing the complaint, as we must, in the light most favorable to YPL and resolving all doubts in its favor, neither the plain language of the statute nor this Court's precedent deprive YPL of standing to file its claim. Rather, OCGA § 44-12-24 (2014) expressly prohibits the assignment of a right of action based in fraud. Consequently, in both *Merrill Ranch Properties* and *Golshani,* we held that an assignee of debt lacked standing under OCGA § 44-12-24 (2014) to pursue a fraudulent transfer claim otherwise belonging to a previous debt holder for conveyances made prior to the date of the debt assignment. See *Merrill Ranch Properties*, 336 Ga. App. at 731 (3) (summarizing *Golshani* as holding that "an assignee of debt is precluded [by OCGA § 44-12-24] from pursuing a *pre-assignment*

_____

[6] In the 2015 amendments to the UFTA, the Georgia General Assembly added section 18-2-74 (c), which now provides that "[i]f a creditor is a successor or assignee, a right of action [for fraudulent transfer under OCGA § 18-2-74 (a)] is automatically assigned to such successor or assignee." See Ga. L. 2015, Act 167, §4A-1, eff. July 1, 2015.

11

fraudulent transfer claim under the UFTA") (citation and punctuation omitted; emphasis supplied.); *Golshani*, 334 Ga. App. at 180 (1) (a) (holding that an assignee of the original creditor lacked standing to set aside as fraudulent a conveyance made before assignment of the debt).

In contrast, YPL alleges that the Transfers at issue here were made after YPL held the Note and the Guaranty. Thus, YPL does not seek a remedy for an injury stemming from fraud to a previous holder of the note, but rather for an injury that was committed directly against it. If true, although YPL is an assignee of debt, the right of action for fraudulent conveyance was not assigned, but is its own, removing this case from the ambit of both OCGA § 44-12-24 (2012) and our prior precedent.

The Rowland Appellees nevertheless maintain that the Defective Deeds attached to the later-recorded Corrective Deeds establish that the Judgment Debtor transferred the Properties to the Limited Partnership in 2003, prior to YPL's acquisition of, and indeed the execution of, the Note and Guaranty. They argue that the only post-assignment conveyances were made from the Limited Partnership to MJR Finance and were not subject to being set aside.

To be sure, a determination that the Judgment Debtor conveyed his interests in the Properties to the Limited Partnership in 2003 and that the only post-assignment

12

conveyances were those from the Limited Partnership to MJF Finance would be fatal to YPL's UFTA claim. See OCGA § 44-12-24 (2012); *Merrill Ranch Properties*, 336 Ga. App. at 731 (3); *Golshani*, 334 Ga. App. at 179-80 (1) (a); see also *Maxco, Inc. v. Volpe*, 247 Ga. 212, 214 (1) (274 SE2d 561) (1981) ("A limited partner owns an interest in the legal entity but holds no title to the assets of the partnership.").[7]

Such a determination, however, cannot be made at this stage of the litigation. Although a deed that has been neither witnessed nor recorded may be sufficient to bind the parties and their privies to the deed itself, it is not admissible to prove title in the grantee without first laying the proper foundation. See *Latham v. Fowler*, 199 Ga. 648, 648 (34 SE2d 870) (1945) ("Where, in a suit for land, the right of the plaintiffs was predicated upon an alleged lost and unrecorded deed . . . , proof of the

---

[7] But see OCGA § 14-9A-52 (a), (b) ("On due application to a court of competent jurisdiction by any judgment creditor of a limited partner, the court may charge the interest of the indebted limited partner with payment of the unsatisfied amount of the judgment debt . . . [T]he interest may be redeemed with the separate property of any general partner, but may not be redeemed with partnership property."); *Nigri v. Lotz*, 216 Ga. App. 204, 205 (2) (453 SE2d 780) (1995) ("The charging order remedy entitles the creditor to receive the profits and surplus of the limited partnership, which the limited partner would otherwise have been entitled to receive, up to the unsatisfied amount of the judgment debt, but gives no direct remedy against specific limited partnership property.").

existence of a genuine original must have been established before secondary evidence relating thereto would have been admissible."); *Hoover v. Mobley*, 198 Ga. 68, 73 (31 SE2d 9) (1944) ("The penalty for failure to execute the deed in the manner prescribed by the statute is a refusal to admit the same to record."); see also *Smith v. Forrester*, 156 Ga. App. 79, 80 (1) (274 SE2d 101) (1980). On a motion to dismiss, the question before this Court is whether the allegations of the complaint, when construed in the light most favorable to YPL and with all doubts resolved in its favor, "disclose with certainty that [YPL] would not be entitled to relief under any state of provable facts." (Punctuation and footnote omitted.) *Dove*, 316 Ga. App. at 9. With factual questions remaining as to the authenticity of the Defective Deeds, we cannot say that YPL lacks standing to pursue its UFTA claim based upon its status as an assignee of debt.[8] Compare OCGA § 44-12-24 (2012); *Merrill Ranch Properties*, 336 Ga. App. at 731 (3); *Golshani,* 334 Ga. App. at 179-80 (1) (a).

(B) The Rowland Appellees assert that YPL failed to assert any viable claims against M. Rowland, Boudreau, and Rowland Companies, Inc. On this point, we agree.

---

[8] Our holding under the UFTA renders it unnecessary for us to address YPL's additional arguments regarding standing.

14

YPL, as creditor, can seek relief under the UFTA against the Judgment Debtor, as well as any recipient of the Transfers made by the Judgment Debtor, *i.e.*, the Limited Partnership. See OCGA § 18-2-77 and §18-2-78. Neither M. Rowland, Boudreau, nor Rowland Companies, Inc., however, received any interest in the Properties from the Judgment Debtor that would render them subject to an UFTA claim by YPL. Because they are likewise not debtors of YPL as that term is defined under the UFTA, any transfers made by them are not subject to attack by YPL. See OCGA § 18-2-74 (a) (2012) ("A transfer made . . . *by a debtor* is voidable as to a creditor . . .") (emphasis supplied); OCGA § 18-2-75 (a) (2012) (same); *Merrill Ranch Properties*, 336 Ga. App. at 727-31 (2) (holding that creditor lacked standing under the UFTA to set aside transfers made by non-debtors). It follows that the trial court did not err in granting the motion to dismiss as to M. Rowland, Boudreau, and Rowland Companies, Inc.

(C) YPL argues that the trial court erred in dismissing its UFTA claim to the extent that the court held that it was barred by the statute of limitations. Georgia law mandates that a claim challenging a transfer as fraudulent must be filed within four years of the date of the transfer, unless the transfer was made with an actual intent to defraud a creditor, in which case the claim may be filed "within one year after the

transfer . . . was or could reasonably have been discovered by the claimant" if later than four years. See OCGA § 18-2-79 (1), (2) (2012).

The Rowland Appellees assert, as they did in the trial court, that the four-year limitations period began to run in 2003, when the Defective Deeds were allegedly executed, and that the one year "discovery" period for intentional fraud began to run, at the latest, on September 5, 2012, the date on which the Corrective Deeds were recorded. They argue that YPL failed to exercise reasonable diligence in discovering the deeds during that period and, consequently, that its UFTA claim, filed in August 2015, is time barred.

Even assuming that the reference to the year 2003 in the first paragraph of the otherwise undated Defective Deeds was sufficient to prove that the deeds were executed in 2003, those deeds, as we held in Division V (1) (A), cannot prove the passing of title for the purposes of the record without the Rowland Appellees first laying the proper foundation for their admission. See *Latham*, 199 Ga. at 648; *Hoover*, 198 Ga. at 73. Moreover, questions concerning a plaintiff's diligence in discovering an alleged fraud are generally questions for a trier of fact. *Merrill Ranch Properties*, 336 Ga. App. at 733 (4). Regardless, the record does not establish as a matter of law that YPL's UFTA claim is time barred and, consequently, the trial court

16

erred in dismissing it on this ground. See *Hickson v. Bryan*, 75 Ga. 392, 393 (2) (b) (1885) ("Unless the facts from which fraud is inferred are undisputed, it is never a question of law, and the same rule applies where fraud and concealment are replied to a plea of the statute of limitations."); *Merrill Ranch Properties*, 336 Ga. App. at 733 (4) ("[I]ssues concerning a plaintiff's diligence usually must be resolved by the trier of fact . . .").

2. *Declaratory Judgment*. Finally, YPL asserts that the trial court erred in dismissing its action for a declaratory judgment that its purported interest in the Properties is superior to any interest held by MJR Finance. The Rowland Appellees contend that YPL lacks standing to seek declaratory relief because its interest in the Properties is merely contingent, as opposed to an actual, legal interest.

Georgia's Declaratory Judgment Act is meant "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." OCGA § 9-4-1. The statute should be liberally construed, and "gives superior courts the power to declare rights and other legal relations of any interested party in 'cases of actual controversy' under OCGA § 9-4-2 (a) and 'in any civil case in which it appears to the court that the ends of justice require that the declaration should be made' [under OCGA § 9-4-2 (b)]." *Walker v. Owens*, 298 Ga. 516, 518 (783 SE2d

17

114) (2016); see *Lapolla Industries, Inc. v. Hess*, 325 Ga. App. 256, 257 (1) (750 SE2d 467) (2013) ("The declaratory judgment statute is liberally construed; applies where a legal judgment is sought that would control or direct future action; and requires under subsection (a) or (b) the presence in the declaratory action of a party with an interest in the controversy adverse to that of the petitioner."). An "interested" party within the context of the statute is one who "has a protectable interest and asserts an adverse claim on an accrued statement of facts." *Hobgood v. Black*, 144 Ga. App. 448, 449 (241 SE2d 60) (1978).

Construed in the light most favorable to the complaint, YPL alleges that it has a legal interest in the Properties vis-a-vis its judgment, the writ of fieri facias, and the UFTA due to the alleged fraudulent nature of the Transfers. That disputed factual issues remain as to the actualization of YPL's claimed interest does not foreclose on its standing to seek a declaratory judgment as to the priority of that interest for the purposes of a motion to dismiss. See generally *Hobgood v. Black*, 144 Ga. App. 448, 449 (2) (241 SE2d 60) (1978) ("The fact that the dispute in a declaratory judgment action turns upon questions of fact does not withdraw it from judicial cognizance. The legal consequences flow from the facts, and it is the province of the court to ascertain and find the facts in accordance with the rules prescribed in the Georgia Declaratory

18

Judgments Act in order to determine the legal consequences.") (citation and punctuation omitted.); see also OCGA § 9-4-6 ("When a declaration of right or the granting of further relief based thereon involves the determination of issues of fact triable by a jury and jury trial is not waived, the issues shall be submitted to a jury . . ."); *Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312, 314 (3) (66 SE2d 726) (1951) (reversing the trial court's dismissal of appellant's declaratory action involving its ownership of real property). It follows that the trial court erred in dismissing YPL's claim for declaratory judgment at this stage of the litigation.

In sum, we affirm the trial court's dismissal of the complaint as to M. Rowland, Boudreau, and Rowland Companies, Inc. We otherwise reverse.[9]

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Self, J., concur.*

---

[9] We likewise reverse the trial court's dismissal of the claim for recovery of attorney fees and expenses to the extent it is predicated upon the surviving claims of YPL's complaint.

19