**FOURTH DIVISION**
**DILLARD, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 5, 2017**

# In the Court of Appeals of Georgia

A17A0130. CALLAWAY BLUE SPRINGS, LLLP v. WEST BASIN CAPITAL, LLC.

DILLARD, Presiding Judge.

In an action brought under the Uniform Fraudulent Transfer Act ("UFTA"), Callaway Blue Springs, LLLP ("CBS") appeals the trial court's grant of West Basin Capital, LLC's ("West Basin") motion to be substituted as the party plaintiff, its grant of West Basin's motion for an interlocutory injunction, and its denial of CBS's motion for summary judgment. On appeal, CBS argues that the trial court erred in finding that West Basin has standing to pursue a UFTA claim against it and that, even if West Basin has standing, the trial court erred by relying on erroneous factual findings in granting West Basin's request for injunctive relief. Because we agree that

West Basin lacks standing to pursue a claim against CBS under the UFTA, we reverse.

The facts relevant to this appeal are undisputed.[1] On June 27, 2014, following a bench trial in a separate, but related, case, a trial court ordered the Estate of Cason J. Callaway, Jr. (the "Callaway Estate") to specifically perform an agreement to purchase CBS stock from two of its shareholders, Larry Garner, Sr. and Larry Garner, Jr. (the "Garners") for $1,200,000.[2] Then, on October 31, 2014, the Garners initiated this lawsuit against the Callaway Estate, CBS, and several Callaway family members, asserting a claim under the UFTA and seeking damages for alleged fraudulent

---

[1] To the extent that there had been any disputed material facts, we apply a "de novo standard of review to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Ashton Atlanta Residential, LLC v. Ajibola*, 331 Ga. App. 231, 232 (770 SE2d 311) (2015) (punctuation omitted).

[2] This Court affirmed the 2014 judgment on appeal, and in doing so, set forth the underlying facts giving rise to that dispute. *See Callaway v. Garner*, 327 Ga. App. 67, 68 (755 SE2d 526) (2014) (physical precedent only), *reversed and remanded in part on other grounds by Estate of Callaway v. Garner*, 297 Ga. 52 (772 SE2d 668) (2015), and *opinion vacated in part in part by Callaway v. Garner*, 333 Ga. App. 747 (776 SE2d 829) (2015). In yet another appeal arising from this litigation, we affirmed the trial court's dismissal of a notice of appeal filed by The Estate of Cason J. Callaway, Jr. from the trial court's entry of final judgment in favor of Larry Garner, Sr. and Larry Garner, Jr. in their civil action against the Estate, seeking specific performance of Cason Callaway's agreement to purchase stock from the Garners. *See Callaway v. Garner*, 340 Ga. App. 176 (796 SE2d 906) (2017).

conveyances of property.[3] In their complaint, the Garners asserted that Cason Callaway, Jr. and his wife, Nancy, created CBS in 2010 for the purpose of transferring real estate worth $5,000,000 to the company in an effort to defraud their creditors, which now included the Garners. The Garners sought damages, including, *inter alia*, satisfaction of the $1,200,000 judgment that they had been awarded. According to the Garners, any transfers of the property were voidable under the UFTA because they were made with the intent to hinder, delay, or defraud the Garners as creditors of the Callaway Estate.

Approximately one year later, on October 13, 2015, West Basin filed a motion to be substituted as the party plaintiff in place of the Garners, an amended complaint, and a motion for an interlocutory injunction, requesting an order that, *inter alia*, enjoined CBS and the other defendants from further transfer or encumbrance of the property that was the subject of the alleged fraudulent transfers, as well as from diluting the Callaway Estate's interest in CBS. In its motion to be substituted as the plaintiff, West Basin asserted that, after the Garners initiated their suit under the

_____

[3] Although the Garners' complaint included several different counts alleging UFTA violations, the alleged fraudulent transfers all occurred in 2010 and pertained to a single parcel of land. For ease of reference (and because this appeal involves only the issue of West Basin's standing to sue), we refer to the Garners' complaint as asserting a single UFTA claim.

UFTA, they assigned to West Basin all of their rights to collect the $1,200,000 judgment from the Callaway Estate and "all right, title, and interest asserted in this Transfer Case . . . ." And in support of this motion, West Basin attached the assignments, which were executed by the Garners on October 7, 2015, as exhibits.

In response, CBS argued that West Basin, as an assignee of the fraudulent-transfer claim, lacked standing to pursue the claim under the UFTA. CBS acknowledged that, on July 1, 2015, the UFTA was renamed and the provisions were amended to permit the assignment of fraudulent-transfer claims, but it contended that the amendments do not apply to the 2010 transfers at issue.[4] In addition, CBS filed a motion for summary judgment, arguing that the Garners were no longer one of its creditors, which is required to bring a claim under the UFTA, because they had assigned their interest in the $1,200,000 judgment as well as their fraudulent-transfer claim to West Basin. Ultimately, the trial court denied CBS's motion for summary

---

[4] We will refer to the operative provisions of the UFTA as they existed at the time the complaint was filed, while noting that the UFTA has since been amended in 2015 and is now called the Uniform Voidable Transactions Act ("UVTA"). *See* Ga. L. 2015, p. 996, § 4A-1 (effective July 1, 2015).

4

judgment and granted both West Basin's motion to be substituted as party plaintiff and its request for injunctive relief. This appeal by CBS follows.[5]

1. CBS first argues that West Basin lacks standing to pursue the Garners' fraudulent-transfer claim because claims brought under the UFTA are not assignable. We agree.

At the outset, we note that a trial court's decision with respect to standing "will not be reversed absent clear error, although we review de novo any questions of law inherent in that decision."[6] And, of course, the interpretation of a statute is a question of law, which is "reviewed de novo on appeal."[7] Moreover, when only a question of law is at issue, as here, we "owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[8] In reviewing the statutes at issue in this

---

[5] *See* OCGA § 5-6-34 (a) (4) (providing that all judgments or orders on requests for interlocutory or final injunctions are directly appealable); *Mitchell v. Kenya*, 216 Ga. App. 80, 81 (1) (452 SE2d 799) (1995) ("Although the denial of summary judgment must be appealed in accordance with the interlocutory appeal provisions of OCGA § 5-6-34 (b), such an interlocutory ruling can be appealed without application when it is tied to the appeal of a directly appealable order or judgment.").

[6] *Harden v. Banks Cty.*, 294 Ga. App. 327, 328 (1) (670 SE2d 133) (2008).

[7] *Kemp v. Kemp*, 337 Ga. App. 627, 632 (788 SE2d 517) (2016) (punctuation omitted).

[8] *Id.* (punctuation omitted).

5

appeal, we are mindful that in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[9] Toward that end, we must afford the statutory text its plain and ordinary meaning,[10] consider the text contextually,[11] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[12] and seek to "avoid a construction that makes some language mere surplusage."[13] Simply

---

[9] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[10] *Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation and citation omitted)); *see State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . .").

[11] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___, ___ (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("The common and customary usages of the words are important, but so is their context." (punctuation omitted)).

[12] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013).

[13] *In the Interest of L.T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855,

put, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[14]

As acknowledged by both parties, in *RES-GA Hightower, LLC v. Golshani*,[15] this Court recently considered whether, under OCGA § 44-12-24 and the Supreme Court of Georgia's decision in *Security Feed & Seed Company of Thomasville, Inc. v. Ne Smith*,[16] an assignee to a debt has standing to assert a claim that the debtor fraudulently conveyed property in violation of the UFTA.[17] In doing so, we first noted that "under the plain terms of the UFTA, an assignee to debt ordinarily would qualify as a 'creditor' who has a 'claim,' but nothing in the UFTA specifically addresses

---

856 (720 SE2d 305) (2011).

[14] *Holcomb v. Long*, 329 Ga. App. 515, 518 (1) (765 SE2d 687) (2014) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[15] 334 Ga. App. 176 (778 SE2d 805) (2015).

[16] 213 Ga. 783 (102 SE2d 37) (1958).

[17] *See Golshani*, 334 Ga. App. at 176.

assignments of such claims."[18] But in Georgia, a separate statute sets forth certain claims that are not assignable.[19] Specifically, under OCGA § 44-12-24,

> [e]xcept for those situations governed by Code Sections 11-2-210 and 11-9-406, a right of action is assignable if it involves, directly or indirectly, a right of property[, but] [a] right of action for personal torts, for legal malpractice, or for *injuries arising from fraud* to the assignor may not be assigned.[20]

Thus, the question in *Golshani* was "whether a claim under the UFTA to set aside a property transfer as defrauding creditors is a 'right of action . . . arising from fraud' such that it is not assignable."[21] Ultimately, relying on *Ne Smith* and the plain language of the UFTA, we held that an assignee of debt is precluded from pursuing a fraudulent-transfer claim even if the assignee meets the definition of a "creditor" under the Act.[22]

---

[18] *Id.* at 178 (1) (a).

[19] *See id.*

[20] (Emphasis supplied).

[21] *Golshani*, 334 Ga. App. at 178 (1) (a).

[22] *Id.* at 180 (1) (a); *see Ne Smith*, 213 Ga. at 784 (1) ("[When], as here, the purchaser or assignee of accounts receivable brings an action to recover on an open account owing by the defendant debtor to the assignor and assigned to the plaintiff, and in the same action seeks equitable relief to set aside an alleged fraudulent deed

8

To further bolster our holding in *Golshani*, we noted, *inter alia*, that the 2015 amendments to the UFTA supported our conclusion.[23] Indeed, because the newly enacted UVTA specifically amended the UFTA to allow assignees and successors to debt to pursue fraudulent-transfer claims under the UVTA, this Court presumed, as it should, that such assignments were not allowed under the UFTA, which was silent on the issue of whether fraudulent-transfer claims were assignable.[24] We further noted that the language of the amendments themselves gave no indication that they should be applied retroactively, and thus, they only apply to claims arising after July 1,

---

to hinder, delay, and defraud his creditors, made by the debtor to his wife prior to the date on which the accounts receivable were assigned to the plaintiff, and also a subsequent loan deed made by the wife to counsel of the defendant to secure an indebtedness due by her to them, the trial judge did not err in sustaining the general demurrer of the defendants to so much of the petition as sought such equitable relief . . . .").

[23] *See Golshani*, 334 Ga. App. at 180 (1) (b).

[24] *See id.* at 181-82 (1) (b); *see also Nuci Phillips Mem'l Found., Inc. v. Athens Clarke Cty. Bd. of Tax Assessors*, 288 Ga. 380, 383 (1) (703 SE2d 648) (2010) ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. Furthermore, when a statute is amended, from the addition of words it may be presumed that the legislature intended some change in the existing law." (punctuation and citation omitted)).

2015.[25] As a result, this Court, in *Golshani*, affirmed the trial court's grant of summary judgment to the debtor because the plaintiff creditor, which, in 2010, had been assigned all rights, title, and interest in the debt, lacked standing to bring a claim under the UFTA arising from alleged fraudulent transfers that occurred in 2009.[26] And our holding in *Golshani*—that claims brought pursuant to the UFTA are not assignable—was recently adopted in *Merrill Ranch Properties, LLC v. Austell*,[27] a factually indistinguishable case.[28]

In an attempt to distinguish *Golshani* and *Austell*, West Basin argues that the provisions of the UVTA, rather than the UFTA, apply to this case because, although the alleged fraudulent transfers occurred before July 1, 2015 (*i.e.*, the UVTA's effective date), the Garners did not assign their fraudulent-transfer claim to West Basin until October 7, 2015. Thus, West Basin contends that it has standing to pursue

---

[25] *See Golshani*, 334 Ga. App. at 181-82 (1) (b).

[26] *See id.* at 177-78, 182 (1) (b).

[27] 336 Ga. App. 722, 731 (3) (784 SE2d 125) (2016).

[28] *Id.* at 731-32 (3); *Cf. RES-GA YPL, LLC v. Rowland*, ___ Ga. App. ___, ___ (V) (1) (a) (798 SE2d 315) (2017) (reaffirming and discussing the holdings in *Golshani* and *Austell* in a UFTA case, but finding that those cases were inapplicable when the plaintiff creditor sought a remedy for an injury that was committed directly against it, not for an injury stemming from fraud to a previous holder of the debt).

a claim under the UVTA because its "right of action" did not accrue until *after* the UVTA's effective date.[29] But *Golshani* expressly (and rightly) held that "the amendments [to the UFTA] only apply to *transfers made* or *obligations incurred* on or after July 1, 2015[,] *and* only to a right of action accruing after July 1, 2015."[30] And here, it is undisputed that, regardless of when West Basin's right of action

---

[29] We note that, in arguing that its "right of action" accrued under the UVTA at a later date than its "cause of action" accrued under the UFTA, West Basin relies on extra-jurisdictional legal authority that is not binding on this Court. In fact, the only Georgia case cited by West Basin to support its contention that, under the UFTA, multiple "rights of action" can accrue at different times based on the same "cause of action," *Burns v. Brickle*, 106 Ga. App. 150 (126 SE2d 633) (1962), is entirely inapplicable to the circumstances of this case. Indeed, *Burns* involved personal-injury and wrongful-death claims arising from a car accident, and, as a result, neither the provisions of the UFTA and UVTA nor this Court's decisions regarding standing to sue under those statutes was at issue. *See generally id.* In *Burns*, we addressed whether a plaintiff could initiate a separate lawsuit to pursue a wrongful-death claim on behalf of her son when she had already initiated a personal-injury action on her own behalf. *See id.* at 151. Ultimately, we held that the plaintiff could do so because "the injury sustained by the plaintiff on account of the death is sustained in a different capacity from the injury sustained by the plaintiff on account of his or her own personal injuries, and for this reason the rule against splitting causes of action [was] not applicable." *Id.* Here, unlike in *Burns*, although West Basin seeks to be substituted as the plaintiff, there is only a single claim at issue—the fraudulent-transfer claim asserted by the Garners on October 31, 2014, which was based on fraudulent transfers of land by members of the Callaway family in 2010. Moreover, unlike the mother in *Burns*, who sought to pursue a wrongful-death claim on her son's behalf, West Basin is not pursuing its claim on behalf of someone else.

[30] *Golshani*, 334 Ga. App. at 181 (1) (b) (emphasis supplied).

11

accrued, the alleged fraudulent transfers, as well as the Callaway Estate's obligation to pay the $1,200,000 judgment, which made the Garners (and later West Basin), its creditors, occurred in 2010 and 2014, respectively. It is further undisputed that the Garners initiated this litigation in 2014 under the UFTA *before* the UVTA was enacted. And it is well settled that "an assignee 'stands in the shoes' of the assignor and obtains no greater rights than the assignor possessed at the time of assignment."[31] Thus, because the Garners' UFTA claim was unassignable for the reasons set forth in *Golshani*, West Basin's argument that it should be permitted to benefit from the greater rights provided to creditors by the UVTA is unavailing.

In reaching the opposite conclusion, the trial court, in a somewhat cursory order, found that the language of Senate Bill 65[32] and the relevant legislative history of the UVTA evinces the General Assembly's "intent" for West Basin to have

---

[31] *Houghton v. Sacor Fin., Inc.*, 337 Ga. App. 254, 258 (1) (b) (i) (786 SE2d 903) (2016) (punctuation omitted); *accord S. Telecom, Inc. v. TW Telecom of Ga. L.P.*, 321 Ga. App. 110, 114 (3) (741 SE2d 234) (2013); *see also Golden Pantry Food Stores, Inc. v. Lay Bros., Inc.*, 266 Ga. App. 645, 648 (1) (597 SE2d 659) (2004) ("It is a well-established principle of Georgia law that an assignee of a contract acquires its rights from the assignor, has no more rights under the contract than the assignor, and *is subject to all the defenses that could have been raised against the assignor*." (emphasis supplied)).

[32] S.B. 65, 153rd Gen. Assemb., Reg. Sess. (Ga. 2015) ("S.B. 65").

12

standing to pursue a fraudulent-transfer claim because the claim was assigned after the UVTA's effective date. Similarly, West Basin contends that the amendments to the UFTA show that the General Assembly "intended" to provide greater rights to creditors and to hold that those amendments do not apply under the circumstances of this case would contravene that "intention." But neither the trial court nor West Basin identify any ambiguous language in the UVTA suggesting that, although the UVTA's provisions do not apply to transfers of land and obligations incurred prior to its enactment, there is some implicit exception to that rule when a *pre*-UVTA claim is assigned from the plaintiff to another creditor after its enactment. And so long as the meaning of the relevant statutory text is plain and does not lead to an unreasonable or absurd result, that is the end of our inquiry.[33] Indeed, it is deeply troubling when

---

[33] *See Ray v. Barber*, 273 Ga. 856, 856 (1) (548 SE2d 283) (2001); *Shorter Coll. v. Baptist Convention of Ga.*, 279 Ga. 466, 470 (1) (614 SE2d 37) (2005); *see also City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002) ("In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts *no further inquiry*." (emphasis supplied and punctuation omitted)); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 397 (1st ed. 2012) ("Intentionalist theorists and courts promote the idea that enacted texts merely evoke or suggest—as opposed to state—what the true law is . . . If this were true, then it would hardly be possible ever to reach a consensus about the law. The traditional view is that an enacted text is itself the law.").

13

judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make sure the law does not cause 'unreasonable consequences,' we venture into dangerously undemocratic, unfair, and impractical territory. The "spirit or reason" approach to statutory interpretation invites judges to read their own policy preferences into the law, as we all believe that our own policy preferences are wise and reasonable, which tempts us to assume, consciously or unconsciously, that the legislature could not have intended differently.[34]

Suffice it to say, we are not in the least bit tempted or persuaded by unenacted or extratextual musings. As Georgians (and Americans), we are "governed by laws, not by the intentions of legislators."[35] And as judges, we should only be concerned with what laws actually say, "not by what the people who drafted the laws intended."[36]

As to the text of the UVTA itself, OCGA § 18-2-74 (c) provides that "[i]f a creditor is a successor or assignee, a right of action under . . . *this Code section* is

---

[34] *Merritt v. State*, 286 Ga. 650, 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially).

[35] *Conroy v. Aniskoff*, 507 U.S. 511, 519 (113 SCt 1562, 123 LE2d 229) (1993) (Scalia, J., concurring); *accord Day v. Floyd Cty. Bd. of Educ.*, 333 Ga. App. 144, 151 (775 SE2d 622) (2015) (Dillard, J., concurring).

[36] SCALIA & GARNER, *supra* at 16; *accord Day*, 333 Ga. App. at 151 (Dillard, J., concurring).

14

automatically assigned to such successor or assignee."[37] Further, OCGA § 18-2-71 (4) defines a "creditor" who can assert a claim under the UVTA, as "a person who has a claim, regardless of when the person acquired the claim, together with any successors or assigns." Given that this revised definition of creditor (to permit the assignment of claims) is included in the UVTA, but not the UFTA, the claim acquired by the creditor, together with any successors or assigns, must be a claim asserted under the UVTA. And again, it is undisputed that the Garners, the original creditors who brought this action under the UFTA, did *not* have a claim under the UVTA that could have been automatically assigned to West Basin as contemplated by OCGA § 18-2-74 (c).[38]

In sum, accepting West Basin's argument—based almost exclusively on a subsection of Senate Bill 65 that was never enacted into law—would require this Court to overrule our prior construction of the UVTA, which was that "the General Assembly has made it clear that the [2015] amendments only apply to *transfers made* or *obligations incurred* on or after July 1, 2015[,] *and* only to a right of action

---

[37] (Emphasis supplied).

[38] *See supra* note 31 & accompanying text.

15

accruing after July 1, 2015."[39] Because we find no basis in the text of the UFTA or the UVTA to support revisiting our holding in *Golshani* and, like the *Golshani* Court, our decision is controlled by *Ne Smith* as well as OCGA § 44-12-24, we decline to do so.[40]

Given the foregoing, the trial court erred in finding that West Basin has standing to be substituted as the plaintiff in place of the Garners to pursue their UFTA claim.

---

[39] *Golshani*, 334 Ga. App. at 181 (1) (b) (emphasis supplied). As noted *supra*, even if West Basin's right of action did not accrue until it received the assignment from the Garners in October 2015, the holding in *Golshani* requires that the transfer, the obligation incurred, *and* the right of action all accrue after July 1, 2015, for the UVTA amendments to apply. *See id.*

[40] *See Smith v. Baptiste*, 287 Ga. 23, 25 (1) (694 SE2d 83) (2010) ("The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence." (punctuation omitted)); *A & A Heating & Air Conditioning Co. v. Burgess*, 148 Ga. App. 859, 860 (1) (253 SE2d 246) (1979) ("Even those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute. Once the court interprets the statute, the interpretation has become an integral part of the statute. This having been done, any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute." (punctuation and citations omitted)); Ga. Const of 1983, Art. VI, Sec. V, Par. III ("The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents.").

2. CBS also argues that the trial court relied on erroneous factual findings in granting West Basin's request for an interlocutory injunction. But given our holding in Division 1 *supra*, the trial court erred in granting *any* relief to West Basin, and we need not separately address whether the trial court erred in granting the injunction.

For all these reasons, we reverse the trial court's grant of West Basin's motion to be substituted as the plaintiff, its denial of summary judgment to CBS, and its grant of a interlocutory injunction to West Basin.

*Judgment reversed. McMillian and Reese, JJ., concur.*