**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2018**

# In the Court of Appeals of Georgia

A18A0671. BRAMBLETT et al. v. HABERSHAM COUNTY.

REESE, Judge.

Teresa and Clarence Bramblett appeal from an order granting a petition for recoupment of costs filed by Habersham County (the "County"), pursuant to OCGA § 4-11-9.8, and a separate order directing the Brambletts, in part, to pay $69,282.85 into the court registry in connection with the boarding, treatment, and care of 29 dogs that the Brambletts refused to surrender after the County seized over 400 animals from their property. For the reasons set forth, infra, we affirm.

The County filed a petition for recoupment of costs in June 2017, alleging that, in April 2017, "over 400 animals were removed from [the Brambletts'] property, [and] the [Brambletts] were each charged with 340 violations of OCGA § 16-12-4 (B)[,] Cruelty to Animals[.]" The petition identified twenty-two dogs that were found

living in the Brambletts' home and eight dogs that were found running loose on the property. The Habersham County Department of Animal Care & Control ("HCACC") "impounded all animals on the property[,]" and "[c]harges of neglect were filed on all but one of the animals which ha[d] not been surrendered." Thus, the County sought recoupment of its costs for the care of the 29 animals "directly involved with the cruelty charges" that had not been surrendered (the "subject animals").

After a hearing, at which HCACC director Madison Hawkins testified, the court found that the County was authorized to impound the subject animals and scheduled a second "hearing to consider evidence related solely to the actual costs incurred by the [C]ounty in providing care for the [subject animals]." After again hearing testimony from Hawkins at the second hearing, the court ordered the Brambletts to pay into the court registry $69,282.85, "an amount sufficient to cover costs of impoundment and care for a period beginning as of the date of impoundment and ending 30 days after the date of the order ($49[,]903.20 + $7[,]211.45 + $3[,]851.00 + $8[,]317.20 = $69,282.85)[.]"

In reaching these figures, the court multiplied the number of days the dogs had been in the County's custody (180) by the number of dogs (29) and the cost per dog per day ($9.56). The court estimated this daily cost based on the HCACC's annual

2

budgeted expenses and the maximum number of dogs (60) that Hawkins testified could be housed at the shelter. The court found that the County had presented evidence of additional costs of $7,211.45 incurred in housing the subject animals at a separate facility and of $3,851 for "provid[ing] cages, air conditioning, maintenance items and heartworm and flea prevention medicine" for the subject animals. The court further ordered the Brambletts to deposit $8,317.20, "(an amount equal to the portion of the original amount attributable to the first 30 days after the date of the initial order) every 30 days thereafter until the owner relinquishe[d] his/her right[s] to the animal(s) or until final disposition of this case[.]" The Brambletts appeal.

> [T]he interpretation of a statute is a question of law, which is reviewed de novo on appeal. Moreover, when only a question of law is at issue, . . . we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review. In reviewing the statutes at issue in this appeal, we are mindful that in considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. Toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. Simply put, when the language of a statute is plain and

3

susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.[1]

With these guiding principles in mind, we turn now to the Brambletts' specific claims of error.

1. The Brambletts argue that the trial court erred in granting the County's petition without first demanding that the County provide notice to the Brambletts pursuant to OCGA § 4-11-9.4, which would have allowed the Brambletts the opportunity to request a hearing pursuant to OCGA § 4-11-9.5.

In 2016, the General Assembly amended the Georgia Animal Protection Act (the "Act")[2] "to create a process for a petition for recoupment of expenses of impoundment[ and] to provide for procedures regarding same[.]"[3] To that end, the General Assembly added OCGA § 4-11-9.8, "Recoupment of expenses of impoundment; process."[4] Section 4-11-9.8 (a) provides:

---

[1] *Callway Blue Springs v. West Basin Capital*, 341 Ga. App. 535, 537 (1) (801 SE2d 325) (2017) (punctuation and footnotes omitted).

[2] OCGA § 4-11-1 et seq.

[3] Ga. L. 2016, p. 178 (caption).

[4] See Ga. L. 2016, p. 178, § 6.

4

Any agency impounding one or more animals as part of any investigation of a violation of Code Section 4-11-9.2, 16-12-4, or 16-12-37, or otherwise providing care for one or more animals impounded pursuant to this article, may file a petition in a court of competent jurisdiction to hear civil cases requesting the court to require the owner of the animal or animals to pay into the registry of such court funds in an amount sufficient to secure payment of all anticipated costs of impoundment and care.

Subsections (b) and (c) set forth the required contents of the petition and the manner of service of the petition. Subsection (d) (1) provides in part that the court "shall" set a hearing on the petition between ten and fifteen business days after the court's receipt of return of service of process.

The petition in this case, filed pursuant to OCGA § 4-11-9.8, specifically alleged that the Brambletts "were each charged with 340 violations of OCGA § 16-12-4 (B)" and that "[c]harges of neglect [had been] filed on all but one of the animals which ha[d] not been surrendered." As quoted above, OCGA § 4-11-9.8 (a) specifically allows an agency to file a recoupment petition when the agency is "impounding one or more animals as part of any investigation of a violation of Code Section 4-11-9.2, 16-12-4, or 16-12-37."

OCGA § 16-12-4 (b) provides:

5

A person commits the offense of cruelty to animals when he or she:

(1) Causes physical pain, suffering, or death to an animal by any unjustifiable act or omission; or

(2) Having intentionally exercised custody, control, possession, or ownership of an animal, fails to provide to such animal adequate food, water, sanitary conditions, or ventilation that is consistent with what a reasonable person of ordinary knowledge would believe is the normal requirement and feeding habit for such animal's size, species, breed, age, and physical condition.

The record is clear that the petition sought recoupment of costs under OCGA § 4-11-9.8 (a) as part of an investigation of violations of OCGA § 16-12-4. Thus, the trial court did not err in finding that the procedure set forth in OCGA § 4-11-9.8 applied. In contrast, by the statutes' plain language, the notice provisions of OCGA §§ 4-11-9.4 and 4-11-9.5 only apply when the animal has been impounded "under" or "pursuant to this article" of the Act.[5]

Nothing in the record indicates that the subject animals were seized pursuant to an inspection warrant under the Act.[6] Instead, the County presented evidence at the

_____

[5] See OCGA §§ 4-11-9.4 (a) (setting forth notice requirements for "any person impounding an animal *under this article*"); 4-11-9.5 (b) (1) (providing circumstances under which "the owner of an animal impounded *pursuant to this article*" can request a hearing) (emphasis supplied).

[6] See OCGA §§ 4-11-9 ("The Commissioner or his designated agents are authorized to enter upon any public or private property at any time for the purpose of

initial hearing that HCACC director Hawkins, who was a POST-certified peace officer, obtained a search warrant from a magistrate judge for suspected violations of OCGA § 16-12-4 (animal cruelty) at a residential dwelling registered to the Brambletts.

Thus, we conclude that the Brambletts were not entitled to notice pursuant to OCGA § 4-11-9.4 and that the trial court did not err in following the plain language of OCGA § 4-11-9.8.

2. The Brambletts contend further that the trial court erred by "not tak[ing] into account the actual predicted costs of the specific 29 dogs at issue, and instead cho[osing] to utilize a formulaic calculation that was overly broad and imprecise."

OCGA § 4-11-9.8 (d) provides in relevant part:

> (2) The scope of the hearing [on an agency's recoupment petition filed under [OCGA] § 4-11-9.8 (a)] shall be limited to whether the

---

inspecting the business premises of any pet dealer or any animal shelter, kennel, or stable and the dogs, cats, equines, or other animals housed at such facility to determine if such facility is licensed and for the purpose of enforcing this article and the rules and regulations adopted by the Commissioner pursuant to this article."); 4-11-9.2 (a) ("At any time there is probable cause to believe that a violation of this article or any rule or regulation adopted pursuant to this article has occurred, the Commissioner, his or her designated agent, or an animal control officer who is an employee of state or local government may apply to the appropriate court in the county in which the animal is located for an inspection warrant under the provisions of Code Section 2-2-11.").

impounding of the animal or animals was authorized. Upon such a showing, the court shall require payment into the registry of the court of *an amount sufficient to cover all costs of impoundment and care, as determined by the court*, for a period beginning as of the date of impoundment and ending 30 days after the date of the order. . . .

(3) The owner shall be ordered to deposit an amount equal to the portion of the original deposit amount attributable to the first 30 days after the date of the initial order every 30 days thereafter until the owner relinquishes the animal or animals or until final disposition of the animal or animals. . . .

(7) Upon the payment of funds into the court registry in accordance with this Code section, the petitioning agency may immediately begin to draw from those funds *for payment of the actual costs incurred* by the petitioning agency in keeping and caring for the animal or animals from the date of impoundment to the date of the final disposition of the underlying criminal action regarding the owner and the animal or animals.

(8) Upon final disposition of the animal or animals, remaining funds deposited with the clerk of the court shall be refunded to the owner.

(9) In the event that an owner is adjudicated not guilty of all charges specified in a petition filed pursuant to this Code section, such owner may request from the agency that filed the petition a refund of all costs paid by the owner pursuant to such petition. In making any such claim for refund, the procedures provided in Code Section 48-5-380 shall apply.[7]

---

[7] (Emphasis supplied.)

8

We conclude that, based on the plain language of OCGA § 4-11-9.8 (d), the trial court did not err to the extent it estimated the County's costs. Subsection (d) (2) does not require the trial court to "analyz[e] the *actual costs* of housing and impounding the specific 29 dogs at issue,"[8] as the Brambletts argue, but instead requires "payment into the registry of the court of *an amount sufficient to cover all costs* of impoundment and care, as determined by the court[.]"[9] The County can then draw from those funds "for payment of the actual costs incurred" under OCGA § 4-11-9.8 (d) (7), subject to the refund provisions of subsections (d) (8) and (d) (9). Because the Brambletts have not shown error, we affirm.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur*.

---

[8] (Emphasis supplied.)

[9] (Emphasis supplied.)